**PROFESSIONAL MEDICAL CARE HOME, INC., Plaintiff–Appellant,**

v.

**Patricia HARRIS, Secretary of Health, Education and Welfare, Defendant–Appellee.**

No. 79–2299.

United States Court of Appeals, Seventh Circuit.

Argued April 9, 1980.

Decided Sept. 24, 1980.

Alfred H. Plummer, III, Wabash, Ind., for plaintiff–appellant.

Henry Eigles, Baltimore, Md., for defendant–appellee.

Before FAIRCHILD, Chief Judge, WOOD, Circuit Judge, and JAMESON, Senior District Judge.*

FAIRCHILD, Chief Judge.

This is an appeal from a judgment in favor of defendant Secretary and against plaintiff. Plaintiff formerly owned a nursing home and was a provider under Medicare. The issues are (1) whether there was substantial evidence to support the Secretary's finding that plaintiff realized a gain exceeding past allowances of depreciation on the sale of the nursing home, and (2) whether the Secretary properly required plaintiff to reimburse the Secretary for past allowances of depreciation. The second issue turns upon the validity of a regulation. We affirm.

From 1967 until 1974 the plaintiff operated a skilled nursing home as "The Stratford House" in Wabash, Indiana.[1] During this time the corporation was a "provider of services" under the Medicare program and, as such, received periodic payments from the Department of Health, Education and Welfare to cover the costs of services rendered to Medicare patients. Pursuant to regulations promulgated by the Secretary (42 C.F.R. § 405.415), one such "allowable cost" for which Stratford House was reimbursed was depreciation of the facility's physical assets. The plaintiff received in excess of $50,000 from the Secretary to cover depreciation during the period of its participation in the program.[2]

In 1974 the plaintiff sold the nursing home to Millers Merry Manor. The contract of sale included the following provision:

> "Buyer agrees that the following values shall be assigned for income tax purposes to the assets hereunder being sold:
>
> | | | |
> |---|---|---|
> | A. | Land | $ 5,000.00 |
> | B. | Nursing Home Building | 319,000.00 |
> | C. | Storage Building | 1,000.00 |
> | D. | Equipment and Fixtures | 5,000.00 |
> | E. | Furnishings | 120,000.00" |

The contract did not assign any value for good will.

The contract figures indicated a gain for depreciable assets exceeding past allowances for depreciation. Accordingly, the "fiscal intermediary" responsible for local

---

* The Honorable William J. Jameson, Senior District Judge for the District of Montana, is sitting by designation.

1. Throughout the briefs the corporate plaintiff refers to itself as "Stratford House." We will do the same.

2. Plaintiff served other patients as well as Medicare. Allowances of depreciation as well as the claim for reimbursement were appropriately apportioned.

administration of the Medicare program determined that Stratford House must reimburse the Secretary for the depreciation payments received while participating in the program. Stratford House invoked the administrative appeals procedure provided by 42 U.S.C. § 1395oo and obtained a *de novo* hearing before the Provider Reimbursement Review Board.

At that hearing Stratford House presented evidence tending to show that the market values of depreciable assets at the time of sale were less than the contract allocations and that in fact depreciation of the physical assets had occurred. In substance Stratford House claimed that a substantial portion of the price it received represented good will and going concern value.

The Board, however, relied on the contract values to find a gain, and applied a regulation, 42 C.F.R. § 405.415(f), requiring a gain to be included in the determination of allowable cost. The Board affirmed the decision of the fiscal intermediary. The Administrator of the Health Care Financing Administration refused reconsideration, and the Board's decision thus became the decision of the Secretary. Stratford House sought judicial review in this action.

## I.

Stratford House argues that the contractual allocations of value must yield to the evidence of market value it offered at the hearing. It points out that the nursing home was operating at near capacity and was showing a profit, yet the contract failed to allocate any of the price to good will. An appraisal and other evidence tended to show that the value of equipment and buildings was less than the amounts stated in the contract and that a part of the purchase price must necessarily have represented good will.

Stratford House argues that the Board refused to consider this evidence, holding instead that it "must" accept the contractual values as conclusive. Like the district court, we do not read the Board's decision so narrowly. The Board did receive the evidence and appears to have understood the Stratford House position. The Board decided, however, to hold Stratford House to the values to which it had agreed in the contract of sale.

The contract was the result of an arm's length transaction between experienced businessmen. Such a transaction is likely to provide solid evidence of fair market value. Although the phrasing of the contract was that the buyer agreed to the values, the plaintiff must also have agreed. The values were "assigned for income tax purposes," but a claim that a market value agreed to for income tax purposes is not the true market value suggests willingness to defraud and is not very persuasive.

The plaintiff further argues that the regulations place a burden on the buyer, Millers Merry Manor, to show that the contract values did not exceed the fair market value of the assets; and that until that has been done there is no basis for enforcing the contractual values against Stratford House. The regulation to which plaintiff refers is § 405.415(g). That regulation does require the buyer of a facility purchased as an ongoing operation (as this one was) "to demonstrate [in order to establish a cost basis for depreciation] that the sale was a bona fide sale and the price did not exceed the fair market value of the facility at the time of the sale." However, we agree with the district court that this regulation is simply not relevant to the question of whether or not there was substantial evidence to support the Secretary's finding that plaintiff realized a gain.

The regulation, by its own terms, applies to the establishment of a cost basis for the *buyer*; it does not in any way refer to reliance on the sale price in determining gain to the seller. The regulation is designed to prevent sales between related or otherwise not disinterested parties that may take place primarily to provide a stepped—up cost basis for depreciation. Here, of course, there is no real question that this was a bona fide, arm's length transaction between unrelated parties. If the Secretary suspects that the contractual values

are inflated and that the buyer should not be allowed to use those figures as its cost basis for future depreciation, the regulation gives her the authority to require Millers to establish the fair market value of the facilities. In this case she has not chosen to question the transaction. That decision is consistent with her reliance here on the contractually stated values for the depreciable assets but, in any event, the regulations do not require her to make that challenge to the buyer before she will be allowed to assert that the seller realized a gain.

We agree with the district court that the contract is substantial evidence to support the Secretary's determination that a gain was realized on the transaction.

## II.

Regulation 42 C.F.R. § 405.415(f) appears to require that where a gain is realized on sale of a depreciable asset, the Medicare program is to benefit by a retroactive adjustment of previously allowed costs to the extent of a proportional share of the gain, or, as here limited, to the extent of previous allowances for depreciation. The issue, in substance, is whether this regulation, so applied, is authorized by the statute.

The statute requires the Secretary to reimburse providers for the "reasonable costs" of providing services to Medicare patients. 42 U.S.C. § 1395f(b) "Reasonable cost" is defined as

> "the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services." 42 U.S.C. § 1395x(v)(1)(A).

The Secretary is given the responsibility of issuing regulations which prescribe the methods to be used in determining actual cost and is specifically admonished that

> "Such regulations shall (i) take into account both direct and indirect costs of providers of service . . . in order that, under the methods of determining costs, the necessary costs of efficiently delivering covered services to individuals covered by the insurance programs established by this subchapter will not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by such insurance programs, and (ii) provide for the making of suitable retroactive corrective adjustments where, for a provider of services for any fiscal period, the aggregate reimbursement produced by the methods of determining costs proves to be either inadequate or excessive." 42 U.S.C. § 1395x(v)(1)(A).

Pursuant to this statutory authorization, the Secretary has issued regulations which include depreciation as an allowable cost and describe the procedures to be followed in determining the amount of depreciation reimbursable.

In at least two respects, the Secretary has provided for a recomputation of past depreciation allowances in the event of sale or termination of participation in the program. In both a very conservative approach is followed in deciding retroactively whether an original estimate of depreciation represents a cost actually incurred.

In one situation, where an accelerated method of depreciation has been used, and termination occurs at such time that cumulatively substantially more depreciation was paid than would have been paid under the straight line method, the excess will be recovered as an offset or overpayment. 42 C.F.R. § 405.415(d)(3).

This regulation, requiring a retroactive recalculation of depreciation originally allowed, in the interest of carefully limiting costs to those actually incurred, has survived numerous challenges to its validity.[3] In the instant case, plaintiff acknowledges

---

3. *Fairfax Nursing Center, Inc. v. Califano*, 590 F.2d 1297 (4th Cir. 1979); *Daughters of Miriam Center for the Aged v. Mathews*, 590 F.2d 1250 (3rd Cir. 1978); *Springdale Convalescent Center v. Mathews*, 545 F.2d 943 (5th Cir. 1977); *Adams Nursing Home of Williamstown, Inc. v.* *Mathews*, 548 F.2d 1077 (1st Cir. 1977) *disapproved on other grounds, Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 as stated in *Association of American Medical Colleges v. Califano*, 569 F.2d 101 (D.C. Cir. 1977).

that it would not dispute recoupment if limited to the difference between accelerated and straight line depreciation.

A second instance is found in the regulation applied in this case. 42 C.F.R. § 405.-415(f) provides

(f) *Gains and losses on disposal of assets.* Gains and losses realized from the disposal of depreciable assets while a provider is participating in the program, or within 1 year after the provider terminates participation in the program, are to be included in the determination of allowable cost. The extent to which such gains and losses are includable is calculated on a proration basis recognizing the amount of depreciation charged under the program in relation to the amount of depreciation, if any, charged or assumed in a period prior to the provider's participation in the program, and in the period after the provider's participation in the program when the sale takes place within 1 year after termination.

The plaintiff asserts that this regulation is without statutory basis to the extent that it allows the Secretary to recover money from a provider which has had its final audit and has terminated its participation in the program. The plaintiff cites 42 U.S.C. § 1395g which provides a mechanism for the adjustment of periodic payments to a provider "on account of previously made overpayments or underpayments" and asserts that this does not support a regulation which requires adjustments after the contractual relationship between the provider and the Secretary has been terminated.

The identical argument was made by those who were challenging the accelerated depreciation recoupment provisions of § 405.415d(3). Those arguments were rejected by the courts, which found the statutory basis for the regulation not in 1395g but in the "reasonable cost" provisions of 1395x(v)(1)(A). ("Such regulations shall . . . (ii) provide for the making of suitable retroactive corrective adjustments where, for a provider of services for any fiscal period, the aggregate reimbursement produced by the methods of determining costs proves to be either inadequate or excessive.") *Springdale Convalescent Center v. Mathews,* 545 F.2d 943, 954 (5th Cir. 1977). As the courts have pointed out, the recoupment provisions are entirely consistent with 1395x(v)(1)(A)'s mandate to prescribe regulations "in order that . . . the necessary costs of efficiently delivering covered services to individuals covered by the insurance programs established by this subchapter will not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by such insurance programs." *Daughters of Miriam Center for the Aged v. Mathews,* 590 F.2d 1250 (3rd Cir. 1978).

 The law is now clear that the Secretary has the authority to require providers who leave the program to return the depreciation allowance they received as a result of using an accelerated depreciation schedule in excess of that which would have been received under a straight line method.

 The ultimate problem is whether, over time, an estimated amount of depreciation is a "cost actually incurred" as provided in 1395x(v)(1)(A). In our opinion the Secretary has authority to require providers who leave the program to return allowances for straight line as well as accelerated depreciation in order to avoid allowances for depreciation which turn out not to have been a "cost actually incurred."

Intrinsic to plaintiff's present argument against application of the regulation, § 415(f), is the fact that receipt of a gain on sale of property may reflect a number of factors other than that depreciation has been computed at an excessive rate. Inflation may have increased the dollar value, other circumstances may have caused an increased demand and higher market value for particular property, effective bargaining may have brought an advantageous purchase or sale. Obviously plaintiff's assets aged some seven years. Nevertheless a depreciation formula necessarily produces an inexact estimate of the partial consumption of a physical asset, and it is difficult to be certain that any particular amount is a

cost actually incurred. Given these considerations, it is our conclusion that the regulation, as applied here, is a valid implementation of the statute.

AFFIRMED.