CARBON HILL HEALTH CARE, INC., a corporation, Plaintiff,

v.

Rebecca B. BEASLEY, as Commissioner of Medicaid, Alabama Medicaid Agency, an agency of the State of Alabama, Defendant.

Civ. A. No. 80–475–N.

United States District Court,
M. D. Alabama, N. D.

Dec. 7, 1981.

Maurice F. Bishop, Carl E. Johnson, Jr., Bishop, Sweeney, Colvin & Johnson, Birmingham, Ala., for plaintiff.

Charles A. Graddick, Atty. Gen. of Ala., Herman H. Hamilton, Jr., Sp. Asst. Atty. Gen., Thomas S. Lawson & Shapard D. Ashley, Capell, Howard, Knabe & Cobbs, Montgomery, Ala., for defendant.

## MEMORANDUM OPINION

HOBBS, District Judge.

The above styled cause is now before the Court on motions for summary judgment filed by both parties. After hearing oral argument and considering the briefs filed in this case, this Court is of the opinion that there exists no genuine issue of material fact. Thus, summary judgment would be proper in this cause.

At issue in this cause is the validity, as applied to plaintiff, of Chapter 11, par. 4(a) of the *Alabama Nursing Home Reimbursement Manual* promulgated by the Alabama Medicaid Agency (formerly the Alabama Medical Services Administration). Paragraph 4(a) states that compensation shall be paid to:

> Individuals actually performing administrative functions at the facility, such as administrator, assistant administrator, bookkeepers, secretaries, billing clerks, etc. Except for hospital-related nursing homes, the administrator of a facility is considered a full-time position and must serve in that facility. Therefore, reimbursement will not be made for an individual serving as administrator for more than one nursing home or occupying an unrelated position on a full-time basis.

Plaintiff Carbon Hill's administrator/owner is also the 'administrator/owner of McDel Health Care, Inc., and under the regulation cannot be paid for services rendered at both facilities. In April of 1981, after notice to plaintiffs, the Alabama Medicaid Agency deducted from Carbon Hill's April reimbursement payment the amount of previous payments made to Delmus Hyche as administrator of Carbon Hill. Plaintiff contends that the regulation, on its face and as applied, violates plaintiff's rights to due process and equal protection of the law under the Fourteenth Amendment, is void for vagueness, and is preempted by federal law. Defendant denies each of the challenges to its regulation.

*Preemption of Chapter 11, Paragraph 4(a) by Federal Laws and Regulations*

Plaintiff argues that the Alabama Medicaid regulation violates the Supremacy Clause, Art. VI, of the United States Constitution, because Congress has preempted the field by delegating to the Department of Health and Human Services the authority to determine allowable cost items. According to plaintiff, once HHS has established a cost as allowable, a state cannot disallow the cost item by placing restrictions or prerequisites on the allowance. Plaintiff states that Mr. Hyche's administrative duties were primarily devoted to meeting the Medicaid licensing and certification standards; therefore, his salary is an

allowable incurred cost under the HHS regulation set out at 42 C.F.R. § 447.279.[1]

Challenges to state regulations as being in conflict with an allegedly preemptive federal statute are not favored. The presumption is that the state has acted within its authority and consistent with applicable federal law. As the Supreme Court has frequently stated:

> Preemption of state law by federal statute or regulation is not favored in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that Congress has mistakably so ordained. *Chicago & N. W. Tr. Co. v. Kado Brick & Tile,* [450 U.S. 311, 101 S.Ct. 1124, 67 L.Ed.2d 258] (1981), quoting *Florida Lime and Avocado Growers v. Paul,* 373 U.S. 132, 142 [83 S.Ct. 1210, 1217, 10 L.Ed.2d 248] (1963)." *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 522, 101 S.Ct. 1895, 1905, 68 L.Ed.2d 402 (1981).

Defendant argues, and this Court agrees, that Congress intended for state Medicaid agencies to promulgate regulations to insure that allowable costs were incurred in a reasonable manner consistent with the purposes of the Federal Medicaid Program. *See 'Alabama Nursing Home Ass'n v. Harris,* 617 F.2d 388, 392 (5th Cir. 1980). The Social Security Act, Title XIX, 42 U.S.C.A. § 1396 *et seq.,* as amended, specifies that a state plan for medical assistance must

> provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan . . . as may be necessary to safeguard against unnecessary utilization of such care and services and to assure that payments . . . are not in excess of reasonable charges consistent with efficiency, economy, and quality of care. 42 U.S.C.A. § 1396a(a)(30).

[3] The state regulation at issue in this case does not disallow all administrator salaries as costs, instead the regulation attempts to distinguish between administrative costs which are "consistent with efficiency, economy, and quality of care" and those which it deems inconsistent. The Alabama Medicaid Agency has determined that requiring an administrator's undivided attention at a single facility is one safeguard for insuring "efficiency, economy, and quality of care."

Plaintiff further argues that the Alabama Medicaid regulation is contrary to Congress' express sanctioning of payments to nursing home owners who provide services to the home which they own. 42 U.S. C.A. § 405.426(c). The Court agrees with defendant that the purpose of this section is to insure that owners are treated the same as employees who have no ownership interest. The Alabama Medicaid Agency did not disallow the payments because Mr. Hyche was an owner of a nursing home but rather because he was acting as an administrator to two homes. As an owner Mr. Hyche may be in a better position to acquire two administrative posts; however, since the regulation does not on its face or as applied single out owners for disparate treatment, this Court concludes that it does not conflict with the Congressional mandate.

Finally, plaintiff argues that 42 U.S.C.A. § 1396g(e)(2) defines a nursing home administrator as "any individual who is charged with the general administration of a nursing home whether or not such individual has an ownership interest and whether or not his functions and duties are shared with one or more individuals." As noted above, the Alabama Medicaid Agency does allow

---

1. § 447.279 *Cost of meeting certification standards.*

Allowable costs for SNF's and ICF's include all items of expense providers must incur—
(a) to meet the definition of SNF services or ICF services in § 440.40(a) or § 440.150 of this subchapter;
(b) To comply with the standards for SNF's or ICF's in Part 442 of this subchapter;
(c) To comply with requirements established by the State agency responsible for establishing and maintaining health standards under § 431.610 of this subchapter; and
(d) To comply with any other requirements for licensing under State law that must be met to provide SNF or ICF services.

owners to be administrators. Plaintiff urges that the statement "whether or not his functions and duties are shared" means that Congress knew that there might be part-time administrators and intended that they should be compensated. This Court thinks that plaintiff's interpretation of the statute is not its true intent. More logically, the statute indicates that Congress knew that some nursing homes would be large enough to require more than a single administrator. The statute guarantees that a nursing home will be compensated even if the administrative tasks are such that the facility requires an administrator and an assistant administrator to meet the facility's needs. Thus, this Court concludes that Chapter 11, Paragraph 4(a) of the Alabama Medicaid Agency does not conflict with 42 U.S.C.A. § 1396g(e)(2).

This Court is of the opinion that in promulgating the regulation at issue the Alabama Medicaid Agency has acted in a manner consistent with the purpose of the Act and within the authority specifically granted to the states by Congress when the Medicaid Program was established. Thus, the regulation is not invalid under the Supremacy Clause.

### Void for Vagueness

■ Plaintiff contends that the regulation which states that an administrator is considered "a full-time position" is unconstitutionally vague in violation of plaintiff's right to due process in that it fails to provide one in the plaintiff's position with fair notice of when an administrator's salary will be disallowed because his position is not deemed "full time." *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). But the regulation clearly states that "reimbursement will not be made for an individual serving as administrator for more than one nursing home." Thus, it is clear that this regulation gave plaintiff notice that if the administrator it hired was already an administrator

for another nursing home, the cost of that administrator would be disallowed.

Plaintiff contends, and cites testimony from the administrative hearing in support of the contention, that there is no standard for defining "full time" either in terms of hours worked or duties performed, nor is there a standard for defining an "administrator." The question of whether plaintiff's administrator worked a sufficient number of hours, absent the fact of his second post, to be considered "full time" is not presented in this case. Neither is there an argument over whether Mr. Hyche's duties were those of an administrator. Thus, plaintiff can only be arguing that the statute does not put other facilities, whose administrators hold only one position, on notice as to when their administrators' salaries will be disallowed. It is a well settled proposition that constitutional rights are personal and that aside from limited exceptions,[2] "a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the court." *Broadrick v. Oklahoma,* 413 U.S. 601, 610, 93 S.Ct. 2908, 2914, 37 L.Ed.2d 830 (1973). The regulation is not vague as applied to Carbon Hill and the plaintiff has no standing to raise the question of the vagueness of the regulation as applied to others.

### Due Process and Equal Protection

Finally, plaintiff argues that the Alabama Medicaid regulation violates its Fourteenth Amendment rights to substantive due process and to equal protection. Plaintiff's substantive due process argument is that the Fourteenth Amendment invalidates a regulation if it is arbitrary and bears no rational relationship to the enabling federal and state legislation pursuant to which it was enacted. The equal protection claim is based on plaintiff's argument that the Agency's decision to distinguish

---

**2.** Specifically, where individuals not party to a suit may lose by its outcome yet have no means of preserving their rights, or where the constitutional issue is in the area of the First Amendment. *Broadrick v. Oklahoma,* 413 U.S. 601, 611, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830 (1973).

between part-time and full-time administrators, specifically the decision to distinguish between administrators working at two facilities and those working at a single facility, is not rationally related to the purposes of the regulation and the Social Security Act, Title XIX, 42 U.S.C.A. § 1396 *et seq.*, as amended.

The plaintiff cites several cases to support its position that the Due Process Clause of the Fourteenth Amendment is violated if a state regulation bears no rational relationship to the enabling federal legislation. The Court notes that all of the cases cited by the plaintiff deal with Fifth Amendment due process, the Contract Clause, or federal administrative law. Since there is no federal defendant in this case, federal administrative law and Fifth Amendment due process do not apply except insofar as the Fifth Amendment due process rationale applies to the Fourteenth Amendment Due Process Clause.

■ The Fifth Amendment cases [3] discuss the power of Congress to impose retroactive liability without violation of the Due Process Clause. The constitutional theory propounded by the courts invokes the Fifth Amendment Due Process Clause as a limit on Congress' power to impair contracts similar to the limit on the states' power to impair contracts found in Art. I, § 10 of the United States Constitution. *Thorpe v. Housing Authority*, 393 U.S. 268, 278, n. 30, 89 S.Ct. 518, 524, 21 L.Ed.2d 474 (1969). Whether the promulgation of the Alabama Medicaid regulation is addressed as a Contract Clause [4] or due process violation,[5] the extensive discussion in *Nachman Corp. v. Pension Ben. Guaranty Corp.*, 592 F.2d 947, 958–60 (7th Cir. 1979), *aff'd*, 446 U.S. 359, 100 S.Ct. 1723, 64 L.Ed.2d 354, *reh. den.*, 448 U.S. 908, 100 S.Ct. 3051, 65 L.Ed.2d 1137

(1980), establishes that the touchstone of a violation under either clause is the attempt by a state or the federal government to retroactively change a contractual relation among private parties or unilaterally change a contractual relation between an individual and the governing body enacting the law. Neither action is involved in this case. The regulation at issue was promulgated in 1977 by the defendant. Plaintiff, Carbon Hill, did not become certified as a Medicaid facility until October of 1978. The disallowed costs at issue are for time periods in 1979 and 1980. Carbon Hill knew or should have known of the contents of the regulation before it became a certified facility under the program and before it incurred the disputed costs. There is no issue presented in this case of the State attempting to retroactively impose liability or unilaterally alter an existing contractual relationship with the plaintiff; therefore, the Court concludes that plaintiff has failed to state a claim for substantive due process or for violation of the Contract Clause.

As for the equal protection argument, this case involves a distinction based on job classification and is for the purposes of carrying out a social welfare program. This case does not involve a suspect class. The Supreme Court has held that in "the area of economics and social welfare, a state does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect." *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970). A legislature or state agency has the power to address a problem in the manner it deems best,

[for] so long as its judgments are rational, and not invidious, the legislature's ef-

**3.** *Johnson's Professional Nursing Home v. Wunberger*, 490 F.2d 841 (5th Cir. 1974); *Nachman Corp. v. Pension Ben. Guaranty Corp.*, 592 F.2d 947, 958–60 (7th Cir. 1979), *aff'd* 446 U.S. 359, 100 S.Ct. 1723, 64 L.Ed.2d 354, *reh. den.*, 448 U.S. 908, 100 S.Ct. 3051, 65 L.Ed.2d 1137 (1980).

**4.** *Allied Structural Steel Co. v. Spannus*, 438 U.S. 234, 98 S.Ct. 2716, 57 L.Ed.2d 727, *reh.*

*den.*, 439 U.S. 886, 99 S.Ct. 233, 58 L.Ed.2d 201 (1978); *W. B. Worthen Co. v. Thomas*, 292 U.S. 426, 54 S.Ct. 816, 78 L.Ed. 1344 (1934).

**5.** *Railroad Retirement Board v. Alton Railroad*, 295 U.S. 330, 55 S.Ct. 758, 79 L.Ed. 1468 (1935); *Usery v. Turner Elkhorn Mining*, 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976).

forts to tackle the problems of the poor and the needy are not subject to a constitutional straitjacket. The very complexity of the problems suggest that there will be more than one constitutionally permissible method of solving them. *Jefferson v. Hackney*, 406 U.S. 535, 546, 92 S.Ct. 1724, 1731, 32 L.Ed.2d 285, *reh. den.*, 409 U.S. 898, 93 S.Ct. 178, 34 L.Ed.2d 156 (1972).

State laws and regulations dealing with social welfare should only be set aside if they are "without rational and substantial relation to the object of the legislation," are "arbitrary" or "capricious." *McGowan v. State of Maryland*, 366 U.S. 420, 425, 81 S.Ct. 1101, 1104, 6 L.Ed.2d 393 (1961). "The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the state's objectives.... A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *Id.*

■ In his affidavit, the Deputy Commissioner of Medicaid for the State of Alabama stated that before the present regulation was adopted, "there was no reliable way of determining if such a person [an administrator who held another job] was providing the time and attention required at each nursing facility or whether those persons were, in effect, hiring themselves at a higher salary than that which would ordinarily be paid to a person providing similar services." It is clear from this statement that the regulation was adopted as a prophylactic measure enabling efficient quality and cost control by the Alabama Medicaid Agency. As noted by the Court earlier in this opinion, state programs have the responsibility under the Act of assuring that all charges made against the program are "consistent with efficiency, economy, and quality of care." This Court is of the opinion that this regulation bears a "rational and substantial relation to the object" of the Medicaid program and that the Agency was neither arbitrary nor capricious in choosing this method of quality and cost control of administrative reimbursements.

Plaintiff argues extensively in its brief that the Alabama Medicaid Agency has available several effective methods for maintaining quality and cost control, such as audits, institutional reports, and periodic investigations. This Court fails to see how the Equal Protection Clause requires the defendant to rely on a single method or group of methods to maintain quality and cost control. Nor does the fact that the abuses sought to be avoided by the regulation might be discoverable and controllable through these other methods lead to the conclusion that the defendant's choice was irrational, arbitrary, or capricious.

Plaintiff also argues that the regulation does not guarantee that a full-time administrator will perform more effectively, efficiently, or honestly than a part-time administrator. If the Agency is going to have to employ additional controls to insure that a full-time administrator is doing a proper job there is no rational reason to discriminate between part-time and full-time administrators. The Court determines that it is not irrational for the Agency to assume that an administrator who devotes his talents to a single facility is more likely than not to perform that job with a higher degree of efficiency and quality than one whose time is divided between two facilities. Although the Agency will still have to inspect for problem individuals, this Court cannot see a constitutional violation in the decision to address one aspect of the problem by eliminating a situation which magnifies the difficulty of maintaining quality and cost control in nursing homes.

## CONCLUSION

Plaintiff has challenged Chapter 11, paragraph 4(a) of the *Alabama Nursing Home Reimbursement Manual* as being invalid under the Supremacy Clause and violative of due process and equal protection guarantees. This Court concludes that the regulation is a valid exercise of state power consistent with applicable federal laws, is not so vague as to violate the due process notice requirements, and does not give rise to a discrimination so invidious or irrational as

to violate equal protection standards. For these reasons, this Court is of the opinion that defendant is entitled to summary judgment as a matter of law.

A judgment will be entered in accordance with this memorandum opinion.