**HOODKROFT CONVALESCENT CENTER; Norman Turcotte**

v.

**The STATE OF NEW HAMPSHIRE, DIVISION OF HUMAN SERVICES; Dr. Otis R. Bowen, Secretary of the United States Department of Health and Human Services.**

**Civ. No. 87–312–D.**

United States District Court, D. New Hampshire.

Dec. 2, 1988.

Martha V. Gordon, Manchester, N.H., for plaintiff.

Susan S. Geiger, Office of the Atty. Gen., Gretchen Leah Witt, Office of U.S. Atty., Concord, N.H., for defendants.

## ORDER

DEVINE, Chief Judge.

In this federal question action,[1] plaintiffs Hoodkroft Convalescent Center ("Hoodkroft") and Norman Turcotte seek a declaration that they are not obligated to pay the State of New Hampshire $173,089 as "recapture of depreciation", originally paid to plaintiffs as a part of their reimbursement for care of Medicaid patients. The matter is before the Court on the parties' cross-motions for summary judgment.

Hoodkroft is a nursing home located in Derry, New Hampshire, which at all relevant times was owned by Turcotte. Hoodkroft began participating in the State Medicaid program in 1974, under which it was reimbursed for care of Medicaid patients at a per diem rate determined by the State. This per diem rate included reimbursement for depreciation of Hoodkroft's capital assets. From July 1, 1977, to July 31, 1985, Hoodkroft claimed $321,902 in depreciation expense as an allowable cost. During this same period, the New Hamp-

---

1. Jurisdiction is asserted by way of 28 U.S.C. § 1331.

shire Medicaid program reimbursed the plaintiffs for $173,089 of this expense.

On July 31, 1985, Turcotte sold the equipment, land, and buildings used in the operation of Hoodkroft to McKerley Health Facilities for a total purchase price of $3 million. Plaintiffs realized a gain on their depreciable assets of $2,325,081. On March 11, 1986, the New Hampshire Division of Health and Human Services ("Division"), Bureau of Provider Audits, notified Mr. Turcotte that he owed the State of New Hampshire the $173,089 as "recapture of depreciation" by authority of the Medicaid Reimbursement Manual, page 12, item III(d) ("Sale of Depreciable Assets at a Gain"). Thus, the amount sought to be recaptured represents the entire amount of depreciation expense Hoodkroft received from July 1, 1977, until July 1985, when Hoodkroft was sold.

Plaintiffs appealed the Bureau of Provider Audits' decision to the Division of Human Services on September 26, 1986. On February 2, 1987, the Administrator of the New Hampshire Office of Fair Hearings issued an order staying action on the administrative appeal pending judicial review of the applicable rules. Plaintiffs subsequently filed this action to resolve the legal questions.

*Standard of Review*

█ The same standard of review afforded federal agency action applies to the action of a state agency administering federal Medicaid funding. *Friedman v. Perales,* 668 F.Supp. 216, 221 (S.D.N.Y.1987), *aff'd* 841 F.2d 47 (2d Cir.1988). A reviewing court is required to grant "considerable deference" to an agency's official interpretation of statutory terms and should uphold an agency's interpretation if it is "reasonable and defensible". *Department of the Navy v. Federal Labor Relations Auth.,* 854 F.2d 1, 4 (1st Cir.1988). A provider bears a difficult and heavy burden of prov-

ing that the agency's interpretation conflicts with the statutory scheme. *See Mercy Community Hosp. v. Heckler,* 781 F.2d 1552, 1555 (11th Cir.1986).

*Relevant Law*

Congress enacted the federal Medicaid program to enable the states to furnish medical assistance to needy people. Title XIX of the Social Security Act, 42 U.S.C.A. § 1396 (1983 & Supp.1988). Each state must submit a plan for approval to the Secretary of Health and Human Services. The state plan must "provide for payment of ... services provided under the plan through the use of rates ... which the State finds, and makes assurances satisfactory to the Secretary, *are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities ...."* 42 U.S.C. § 1396a(a)(13)(A) (Supp.1986) (emphasis added). Upon approval of the plan, the state and federal governments share the costs of this program, which is administered by the state. *See* 42 U.S.C. §§ 1396a and 1396b.

In New Hampshire, the New Hampshire Division of Human Services is charged with the administration of the Medicaid program. *See* New Hampshire Revised Statutes Annotated (RSA) 161:2 VI. The State has developed a plan which has been approved by the Secretary of Health and Human Services. As part of its Medicaid plan, the State has incorporated the "recapture of depreciation" rule [2] promulgated by the Secretary under the Federal Medicare program, Title XVIII of the Social Security Act, 42 U.S.C. § 1395, *et seq.*[3] *See* New Hampshire Medical Assistance Manual ("MAM") § 9999.7b(1)(d). In essence, the state rule provides that property sold at a gain for which Medicaid reimbursement

---

**2.** 42 C.F.R. § 413.134(f) (1987) provides in part that "if disposal of a depreciable asset results in a gain or loss, an adjustment is necessary in the provider's allowable cost. The amount of gain included in the determination of allowable cost is limited to the amount of depreciation previously included in Medicare allowable costs."

**3.** The Medicare Act, enacted concurrently with the Medicaid Act, is a health insurance program for retired and disabled individuals which is administered by the federal government.

has been received is subject to recapture of depreciation.[4]

*Discussion*

█ The Medicaid Act requires states to pay providers for all reasonable costs incurred. *See* 42 U.S.C. § 1396a(a)(13)(A). Although the New Hampshire Medicaid program recognizes depreciation as an allowable cost, *see* MAM § 9999.7b(1), it authorizes recapture of that depreciation when property is sold at a gain. The Government reasons that under such circumstances depreciation is not a cost actually incurred. Plaintiffs assert that, despite the increase in Hoodkroft's market value, the assets depreciated, as that term is used under the "reasonable cost method" of accounting; i.e., there was wear and tear on the assets which caused a decrease in their value. Plaintiffs reason that the gain in the property's value could be attributable to market forces and does not necessarily mean that the property did not depreciate. Thus, plaintiffs conclude that the State of New Hampshire's recapture policy is contrary to the Act because it deprives them of reimbursement for the cost of the depreciation their capital assets incurred while they were used in the Medicaid program.

The Court finds that the Secretary and the State of New Hampshire have reasonably concluded that a facility which has been sold at a gain has not actually incurred the cost of depreciation. *See Professional Medical Care Home, Inc. v. Harris*, 644 F.2d 589, 593–94 (7th Cir.1980); *see also Stewards Found. v. United States*, 654 F.2d 28, 34, 228 Ct.Cl. 89 (1981); *but see Mercy Community Hosp., supra*, 781 F.2d at 1557. The purpose of the recapture rule is to "avoid allowances for depreciation which turn out not to have been a 'cost actually incurred.' " *Professional Medical, supra*, 644 F.2d at 593. Although plaintiffs are correct in noting that their capital assets suffered wear and tear, the State reasonably concludes that this is not a cost incurred when the property is sold at a gain. "Depreciation is not an easy cost to compute; it is unavoidably artificial." *Adams Nursing Home of Williamstown, Inc. v. Mathews*, 548 F.2d 1077, 1081 n. 12 (1st Cir.1977). Courts should not be "inclined to substitute [their] notions of proper accounting for those of the Secretary." *Id.*[5]

Moreover, effective July 18, 1984, Congress amended the Medicare Act to specifically approve of the Secretary's recapture policy. *See* Pub.L. No. 98–369, § 2314, 98 Stat. 1079 (1984). This amended section states that the Secretary "shall provide for recapture of depreciation in the same manner as provided under the regulations in effect on June 1, 1984." 42 U.S.C. § 1395x(v)(1)(*O*)(ii); *see also* 1984 U.S.Code Cong. & Admin.News 2026 (under the amendment, the "Secretary would be required to continue recapture of depreciation as under current reimbursement policy.") The Secretary's reimbursement policy is set forth in 20 C.F.R. § 405.415(f), as well as in a provider reimbursement manual (PRM) which is distributed to the states. PRM-1 § 132C, upon which the Division relied in fashioning its recapture policy, is reasonably construed as providing for recapture of depreciation in the event that an asset is sold at a gain. Thus, the Court finds that Congress specifically approved of the Secretary's policies regarding

---

4. MAM § 9999.7b(1)(d) provides:

    (D) Sales of Depreciable Assets at a Gain.

      If any property is sold at a gain for which Medicaid reimbursement or depreciation has been received, such gain shall be subject to recapture. The extent to which any such reimbursement is recaptured is calculated based on HIM-15 § 132, Gains and Losses on Disposal of Depreciable Assets (excluded casualty losses).

"HIM" stands for Health Insurance Manual and refers to the federal manual used by the Secretary to administer the Medicare program. The

HIM has been redesignated the Provider Reimbursement Manual ("PRM"), and the relevant section regarding recapture of depreciation is now PRM–1 § 132C.

5. Plaintiffs' argument that the use of the word "adjustment" in 42 C.F.R. § 413.134(f), *see supra* note 2, precludes a complete "recapture" of depreciation is without merit. Because the regulation applies when assets are sold at a gain or a loss, the term "adjustment" is a neutral characterization of the alteration which may take place.

recapture of depreciation—the same policies adopted by the State of New Hampshire in its Medicaid program and challenged by the plaintiffs herein.

The Court also rejects plaintiffs' contention that the recapture rule impermissibly shifts depreciation expense to private patients, contrary to 42 U.S.C. § 1395x(v)(1)(A).[6] This statutory provision applies to the *Medicare* program, and it has not been adopted by the State of New Hampshire in its Medicaid plan. However, even if this provision does apply to Medicaid, Hoodkroft has not incurred any actual depreciation expense, and therefore a shifting of this "cost" could not have occurred. Moreover, if Hoodkroft were able to keep reimbursement in excess of the amount to which it is entitled, costs would be shifted from private patients to Medicaid patients, contrary to this provision.

Plaintiffs also argue that, even if the rule is valid, they are due a return on equity capital. Plaintiffs reason that because the State has adopted the Medicare regulations in determining reasonable costs under the Medicaid program, it must also adopt the Medicare statutory provision which provides a return on equity capital to certain proprietary providers. *See* 42 U.S.C. § 1395x(v)(1)(B).

■ Congress intended that state authorities have great flexibility in determining costs and setting rates under the Medicaid program. *Alabama Nursing Home Ass'n v. Harris,* 617 F.2d 388, 392 (5th Cir.1980). The states are free to experiment with methods and standards for payment. *Id.* Therefore, although the State of New Hampshire has the discretion to adopt Medicare regulations in determining reasonable costs under the Medicaid program, it is not required to do so, and certainly is not required to adopt the entire Medicare regulatory scheme. Moreover, the Medicaid Act requires that providers be reimbursed for reasonable *costs,* and a return on equity capital is "a profit, not a cost." *Sun Towers, Inc. v. Heckler,* 725 F.2d 315, 335 (5th Cir.), *cert. denied,* 469 U.S. 823, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984).

■ Plaintiffs also argue that the Division's rule on recapture of depreciation is unconstitutional. Plaintiffs first assert that the New Hampshire Legislature's grant of authority to the Division is an unconstitutional delegation of power because the State has not given the Division directives regarding the manner in which it should develop and administer the Medicaid program.

The basic purpose behind the nondelegation doctrine is to prevent administrative agencies from exercising unguided and uncontrolled discretionary power. *See* K. Davis, *Administrative Law Treatise* § 3:15 (1978). This sentiment has been echoed by the New Hampshire Supreme Court, which has stated that "a law is invalid when its commands are in such broad terms as to leave the enforcement agency with unguided and unrestricted discretion in the assigned field of its activity . . . ." *Ferretti v. Jackson,* 88 N.H. 296, 302, 188 A. 474 (1936).

The Court finds that the Division did not exercise unrestricted discretion in fashioning its regulations regarding Medicaid reimbursement, and thus there has been no constitutionally impermissible delegation of authority. Even plaintiffs acknowledge that the Division's discretion is not unguided. In fact, plaintiffs complain in another section of their argument that the Division's adherence to federal Medicare directives has impermissibly tainted its impartiality.

The federal Medicaid program was established as a cooperative federal/state partnership. *Gilman v. Helms,* 606 F.Supp. 644, 654 (D.N.H.1985). States are not required to participate in the Medicaid program, but if they do, they must comply with all requirements imposed by the Social

---

**6.** That section provides in relevant part that in determining reasonable costs "the necessary costs of efficiently delivering covered services to individuals covered by the insurance programs established by this subchapter will not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by such insurance programs . . . ."

Security Act and its implementing regulations. *Massachusetts Ass'n of Older Americans v. Sharp*, 700 F.2d 749, 750 (1st Cir.1983); *see also Gilman, supra,* 606 F.Supp. at 654. Congress intended for state Medicaid agencies to promulgate regulations implementing the Medicaid program, *see Carbon Hill Health Care, Inc. v. Beasley,* 528 F.Supp. 421, 423 (M.D.Ala. 1981), and gave them broad discretion to do so. Thus, the Division appropriately exercised its discretion when it relied on Department of Health and Human Services Medicare regulations and policy manuals in enacting its rules regarding the recapture of depreciation. *Cf. Potter v. James,* 499 F.Supp. 607, 611–12 (M.D.Ala.1980) (in construing Social Security regulations, the court is not limited to bare words of the regulations, but may consider HHS's medical assistance manual).

Moreover, several safeguards exist to prevent the Division from taking arbitrary action. The State plan, which contains the provisions regarding Medicaid reimbursement, has been approved by the United States Department of Health and Human Services. Additionally, the State of New Hampshire has explicitly recognized the need for state rules to comply with federal law and has created a ten-member oversight committee on health and welfare to "recommend changes in state statutes and rules [which] may be necessary in order to comply with any changes in federal law and federal regulations." RSA 126–A:9 (Supp.1987). Because the New Hampshire Legislature has not improperly delegated its authority, and because the Division of Health and Human Services has properly relied on federal directives in fashioning its

rules, the Court finds no constitutional violation.[7]

■ Finally, plaintiffs assert that the State's rule regarding recapture of depreciation is impermissibly vague and overbroad and that recapture would constitute a taking of plaintiffs' property without due process of law in violation of the New Hampshire and United States Constitutions. In essence, plaintiffs assert that they were not on notice that their depreciation reimbursement would be subject to recapture in the event the property were sold at a gain.

The Due Process Clause of the Fourteenth Amendment requires that statutes or regulations be sufficiently specific to provide fair notice of what they prescribe. *Brasslett v. Cota,* 761 F.2d 827, 838 (1st Cir.1985). In this case, Hoodkroft was on notice that depreciation would be subject to recapture. The relevant rule clearly states, "if any property is sold at a gain for which Medicaid reimbursement for depreciation has been received, such gain shall be subject to recapture." He–W 504.-18(p)(6)(b)(1)(iii). And although the rule does not state the precise manner in which recapture will be calculated,[8] the State's Medicaid plan and the State's policy and procedure manual for Medicaid providers do set forth these procedures. *See* MAM § 9999.7b(1)(d). Both documents refer to the provider reimbursement manual, PRM–1 § 132, which describes how the net depreciation adjustment upon disposal of depreciable assets is to be computed and gives examples. These provisions were in effect at all times relevant to Hoodkroft's participation in the Medicaid program.[9] Because the plaintiffs were on notice that their assets were subject to recapture, the Court finds the relevant regulations are not

---

7. Hoodkroft also argues that the Division's rule regarding recapture conflicts with the fundamental purpose of the Medicaid system, and thus the Division has exceeded the discretion granted to it by the Legislature. The Court has already determined that the Division's rule on recapture is consonant with the Medicaid Act, and accordingly rejects this argument.

8. The rule states that recapture "shall be determined by the Bureau of Provider Audits and Rate Setting." *Id.*

9. He–W 504.18(p)(6)(b)(1)(iii) did not become effective until August 16, 1984. However, its precursor, SR 78–115, was filed with the Office of Legislative Services in August 1978, with an effective date of October 1, 1976. The rule contained in SR 78–115 is identical to MAM § 9999.7(b)(1)(d).

unconstitutionally vague.[10]

 Additionally, the plaintiffs have not been deprived of a constitutionally-protected property right. Such a right exists when one has a current valid expectation based on the Government's implied promise to continue an entitlement in an important personal monetizable interest. *Cervoni v. Secretary of HEW*, 581 F.2d 1010, 1018 (1st Cir.1978). Here, plaintiffs were on notice that their depreciation expense would be subject to recapture, and thus they did not have a valid expectation that they were entitled to keep the depreciation expense reimbursement. Accordingly, they did not have a cognizable property interest. *Cf. Cheshire Hosp. v. New Hampshire–Vermont Hospitalization Services*, 689 F.2d 1112, 1122 (1st Cir.1982) (reliance on one's own interpretation of imprecise regulation does not create an entitlement based on that interpretation, or a violation of due process when the administrator or court adopts another reading).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The burden is on the moving party to establish the lack of a genuine material factual issue. *Finn v. Consolidated Rail Corp.*, 782 F.2d 13, 15 (1st Cir.1986). The Court must view the record in the light most favorable to the party opposing the motion, according it all beneficial inferences discernable from the evidence. *Oliver v. Digital Equip Corp.*, 846 F.2d 103, 105 (1st Cir.1988).

In this case, no genuine factual dispute exists. Because the State of New Hampshire has reasonably construed the relevant statutory and regulatory provisions in recapturing Hoodkroft's depreciation, the Court finds and rules that the defendants are entitled to judgment as a matter of law.

Accordingly, defendants' motions for summary judgment (documents no. 17 and 20) are herewith granted, and plaintiffs' motion for summary judgment (document no. 15) is herewith denied.

SO ORDERED.

---

**10.** Moreover, contrary to plaintiffs' assertion that the State did not enforce the recapture rule prior to the time Hoodkroft was sold, an affidavit submitted by Perry Wescott from the New Hampshire Bureau of Provider Audits avers that the recapture program has been in operation since July 1, 1977, and that between that date and the date on which the Hoodkroft facility was sold ten other facilities were sold and their assets were subject to recapture.