**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 14 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

ST. MARK'S CHARITIES
LIQUIDATING TRUST, GEORGE E.
BATES, TRUSTEE,

    Plaintiff-Appellant,

      v.

DONNA E. SHALALA, Secretary of
Health and Human Services,

    Defendant-Appellee.

No. 97-4047

---

Appeal from United States District Court
for the District of Utah
(D.C. No. 93-CV-565)

---

Charles P. Sampson (Carl F. Huefner with him on the brief), of Suitter Axland, Salt Lake
City, Utah, for the appellant.

Anthony J. Steinmeyer, Department of Justice, Washington, D.C., for the appellee.

---

Before **BRISCOE**, **McWILLIAMS**, and **LUCERO**, Circuit Judges.

---

**BRISCOE**, Circuit Judge.

---

Plaintiff St. Mark's Charities Liquidating Trust, the successor to St. Mark's Hospital, a former provider of Medicare services, appeals the district court's judgment affirming a final administrative decision of the Secretary of Health and Human Services. We affirm.

I.

St. Mark's opened in 1973 and participated as a provider in the Medicare program until 1987. Pursuant to Medicare regulations, it claimed an annual allowance for depreciation using the straight-line method and a forty-year estimated useful life for its facility, as specified in the guidelines of the American Hospital Association. The hospital was sold on December 31, 1987, for $39,400,000, plus the net book value of patient accounts receivable, prepaid expenses, and inventory on the date of sale. Based upon an appraisal, $27,438,284 was allocated to the building and fixed equipment. The historical cost of these assets was $15,515,754. Over its fourteen-year period of operation, St. Mark's reported $7,866,716 in depreciation for these assets, of which $4,025,005 had been reimbursed by Medicare since not all patients served by St. Mark's had been Medicare patients.

St. Mark's did not report any gain in its 1987 Medicare cost report for its sale of the building and fixed assets. Blue Cross and Blue Shield of Utah, the Secretary's appointed fiscal intermediary, determined the entire amount of depreciation paid to St. Mark's should be "recaptured" in light of its overall gain on the sale of the building and

the fixed assets. St. Mark's challenged the determination by filing an administrative appeal with the Provider Reimbursement Review Board (PRRB). Following an evidentiary hearing, a majority of the PRRB affirmed the decision. St. Mark's appealed to the Administrator of the Health Care Financing Administration, which upheld the decision of the PRRB, constituting final agency action under delegation from the Secretary. St. Mark's then filed this action for judicial review. The district court affirmed the Secretary's decision.

II.

**Scope of review**

We review the district court's decision de novo. See Board of Trustees of Knox County Hosp. v. Shalala, 135 F.3d 493, 499 (7th Cir. 1998). However, our review of the Secretary's underlying decision is governed by 42 U.S.C. § 1395oo(f), which incorporates the standard of review of the Administrative Procedure Act (APA). Id.; see Kidney Center of Hollywood v. Shalala, 133 F.3d 78, 84 (D.C. Cir. 1998). Under the APA, we may set aside agency action only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). Because St. Mark's contends the Secretary's depreciation recapture regulation is not in accordance with the express language of the Medicare Act, our review is governed by the familiar test set forth in Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). See Kidney Center, 133 F.3d at 86; Good Samaritan Hosp. Reg. Med. Ctr. v.

Shalala, 85 F.3d 1057, 1060 (2d Cir. 1996).

**Depreciation reimbursement under Medicare Act**

Under the statutory scheme developed by Congress, Medicare providers are reimbursed for the "reasonable cost" of providing services to Medicare patients. 42 U.S.C. § 1395f(b)(1). Reasonable cost is defined as "the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services," and is determined pursuant to regulations established by the Secretary. 42 U.S.C. § 1395x(v)(1)(A). "An appropriate allowance for depreciation on buildings and equipment used in the provision of patient care is an allowable cost." 42 C.F.R. § 413.134(a) (previously codified as 42 C.F.R. § 405.415(a)). However, the regulations also authorize "recapture" of depreciation if disposal of a depreciable asset "results in a gain." 42 C.F.R. § 413.134(f)(1) (previously codified as 42 C.F.R. § 405.415(f)(1)). In such circumstances, recapture "is limited to the amount of depreciation previously included in Medicare allowable costs." Id.

Prior to 1984, the Medicare Act was silent with respect to reimbursement for, or recapture of, depreciation. In 1984, the Act was amended by the Deficit Reduction Act of 1984, Pub. L. No. 98-369, 98 Stat. 494 (1984), which added the following provision to the definition of "reasonable costs": "[The Secretary's] regulations shall provide for recapture of depreciation in the same manner as provided under the regulations in effect

-4-

on June 1, 1984." 42 U.S.C. § 1395x(v)(1)(O)(ii).

Between 1974 and 1987, St. Mark's was reimbursed by Medicare for depreciation on its buildings and equipment. When the hospital was sold in 1987, the Secretary determined all of the reimbursed depreciation would be recaptured because the sale had resulted in a gain to St. Mark's and the gain exceeded the entire amount of reimbursed depreciation during the fourteen-year period.

Although St. Mark's all but concedes recapture of depreciation for 1984 through 1987 is proper in light of the 1984 amendments to the Medicare Act, it contends the Secretary is not authorized to recapture any reimbursement payments made prior to that time period. First, St. Mark's argues the recapture regulation is contrary to the pre-1984 direction to reimburse providers for actual costs incurred. Second, it argues even though the 1984 amendments authorized the recapture, application of that method to pre-1984 depreciation payments would be impermissibly retroactive.

**Intent of pre-1984 Medicare Act**

According to St. Mark's, the Secretary's method of recapture precludes payments for "reasonable costs," i.e., actual costs incurred in providing services to Medicare patients. More specifically, it argues the Secretary's method of determining whether depreciation payments have been excessive (i.e., by determining whether the sales price exceeds the depreciated basis for a particular asset) fails to take into account other factors

that might explain why an asset was sold for more than its depreciated basis (e.g., inflation, governmental regulation of entry, economic forces of supply and demand) and does not properly account for the fact that depreciable assets are consumed each time they are used to provide patient services.

To ascertain the validity of the depreciation recapture regulation, we apply the familiar two-set test of Chevron. If Congress has "directly spoken to the precise question at issue," then we "must give effect to the unambiguously expressed intent of Congress." 467 U.S. at 842-43. However, if the statute "is silent or ambiguous with respect to the specific issue," we must defer to the Secretary's interpretation if it is reasonable in light of the structure and purpose of the statute. Id. at 843.

It is uncontroverted that prior to 1984, Congress did not speak directly to the precise question at issue, i.e., how depreciation payments should be recaptured (if at all). Thus, the critical question is whether the depreciation recapture method is reasonable in light of the structure and purpose of the Medicare statute. To date, the D.C. Circuit, the Seventh Circuit, the Eleventh Circuit, and the Court of Claims have considered this precise issue. See Whitecliff, Inc. v. Shalala, 20 F.3d 488 (D.C. Cir. 1994); Mercy Community Hosp. v. Heckler, 781 F.2d 1552 (11th Cir. 1986); Stewards Foundation v. United States, 654 F.2d 28 (Ct. Cl. 1981); Professional Medical Care Home, Inc. v. Harris, 644 F.2d 589 (7th Cir. 1980). The First Circuit and the Eighth Circuit have considered similar issues. See Creighton Omaha Reg. Health Care Corp. v. Sullivan, 950

F.2d 563 (8th Cir. 1991); <u>Hoodkroft Convalescent Center, Inc. v. State of New Hampshire</u>, 879 F.2d 968 (1st Cir. 1989) (reviewing similar recapture rules for Medicaid providers).  Of these courts, four have affirmed the Secretary's method of recapture and two have rejected it as contrary to the Medicare Act.  The First, Seventh, and Eighth Circuits, as well as the Court of Claims, have concluded the depreciation recapture regulation is consistent with Congress' directive to reimburse providers for "reasonable costs," i.e., costs actually incurred.  <u>Creighton</u>, 950 F.2d at 565-66; <u>Hoodkroft</u>, 879 F.2d at 972-75; <u>Stewards</u>, 654 F.2d at 34; <u>Professional Medical Care</u>, 644 F.2d at 592-94.

In <u>Professional Medical Care</u>, the court noted even though depreciable assets age over time, "a depreciation formula necessarily produces an inexact estimate of the partial consumption of a physical asset, and it is difficult to be certain that any particular amount is a cost actually incurred."  644 F.2d at 593-94.  Accordingly, the court concluded the depreciation recapture regulation was "a valid implementation of the [Medicare] statute." <u>Id.</u> at 594.

In <u>Hoodkroft</u>, the court agreed the depreciation recapture rules were a reasonable and lawful interpretation of the federal statute, offering five reasons for its conclusion.  First, the Secretary, who had broad legal power to determine the scope of the federal statute, had concluded depreciation recapture was consistent with the statute (also noting the 1984 amendment was evidence that Congress itself believed the recapture rules were consistent with the statute).  879 F.2d at 972-73.  Second,

the law can, and often does, use the concept of "depreciation costs" to refer not to a physical fact (e.g., that a piece of equipment is worn), nor to an economic fact (e.g., that wear and tear make it less valuable than a new piece of equipment), but rather to an accounting fact, namely, a certain percentage of the nominal historical price paid for the item.

Id. at 973. The court concluded this "stylized allowance" "promises no more than that an investor will eventually receive back the historical, nominal dollars that he invested in an asset." Id. Third, the court compared the Medicare/Medicaid program to public utility regulation systems, which "typically promise[] the regulated firm only a reasonable dollar profit calculated as a percentage of investment, as measured by historical, nominal dollar costs." Id. Fourth, the main reason for using historical, nominal dollars to calculate depreciation and other costs was administrative efficiency. Id. at 974.

> To try to measure the current value of a facility each year; to try to assess the actual yearly economic losses caused by equipment wear and tear; to try to determine the extent to which any gain on resale reflects (a) less-than-expected wear and tear, (b) inflation, or (c) special market factors such as shortages, all would pose formidable administrative difficulties.

Id. Finally, the court concluded "it [wa]s difficult to say that the 'historical cost' system, despite its failure to take inflation into account, [wa]s seriously unfair, as long as a facility and its investors underst[oo]d the ground rules in advance." Id. at 975.

The Eleventh and District of Columbia Circuits have taken a different view. In Mercy Community Hosp., the court concluded the Secretary's interpretation of the depreciation recapture regulation was not reasonably related to the purposes of the enabling legislation. 781 F.2d at 1558. In reaching this conclusion, the court stated:

The . . . sale of the unconsumed remainder of . . . depreciable assets at a price in excess of their depreciated book value does not necessarily imply . . . that the provider did not actually incur some portion of the costs it was reimbursed for the consumption of the asset before it was sold. It may indeed be the case that, upon the sale of a long-lived asset, it will become apparent that some or all of the excess of selling price over depreciated book value reflects some miscalculation of the consumption of the asset that actually occurred while it was in the service of the Medicare program. . . .

A gain on the sale of depreciable assets might result from other factors, however, that cannot possibly be said to suggest that the provider was overcompensated for consumption that occurred or compensated for consumption that did not occur. An increase in the demand for the provider's assets, for example, may cause the market value of the unconsumed remainder of the provider's assets to increase, although they are still being consumed at precisely the rate used to calculate the depreciation allowances that are paid under the Medicare program.

Id. at 1557. Similarly, in Whitecliff, the court noted "[t]he price of a hospital sold many years after it was purchased will reflect a host of factors other than depreciation or wear and tear." 20 F.3d at 492-93. For example, "the role of inflation," and "[c]hanges in the availability of building materials and appropriate hospital sites." Id. at 493. In light of these other factors, the court concluded "a purchase in which the sale price exceeds the depreciated basis does not necessarily indicate that depreciation payments made in the past have been excessive. The two figures are, or at least may be, as apples and oranges are to each other." Id. Accordingly, the court concluded "the Secretary's simplistic linking of depreciation costs with diminished value" violated Congress' decision that "the cost actually incurred" be granted to Medicare providers. Id.

We adopt the majority position and conclude the Secretary's depreciation recapture regulation is a reasonable and lawful interpretation of the Medicare Act. As noted by the

-9-

First and Eleventh Circuits, and as exemplified by the parties' arguments in this case, it is difficult, if not impossible, to devise a depreciation formula that will accurately reflect actual consumption of a physical asset at a particular point in time. Thus, the Secretary has chosen to focus on the historical cost of an asset rather than its economic value and to base annual depreciation estimates on that historical cost and the estimated life of the asset. The result is that a provider is guaranteed recovery of the historical nominal dollars it invests in each depreciable asset. The fact that this formula may not precisely reward a provider with the actual costs of consuming a particular asset does not make the regulation contrary to the Medicare Act, nor does it justify adoption of a different formula that would require complicated and expensive administrative analysis.

Having concluded the depreciation recapture regulation is a reasonable interpretation of the pre-1984 Medicare Act, we find it unnecessary to address the remaining argument concerning retroactivity of the 1984 amendment to the Medicare Act.

### III.

The judgment of the district court is AFFIRMED.