**STEWARDS FOUNDATION,**
a corporation,

v.

**The UNITED STATES.**

No. 180–79C.

United States Court of Claims.

June 17, 1981.

A. T. Wendells, Seattle, Wash., attorney of record, for plaintiff; Wendells, Froelich, Lakefish & Power, Seattle, Wash., of counsel.

Mary S. Mitchelson, Washington, D. C., with whom was Asst. Atty. Gen. Alice Daniel, for defendant; Thomas K. Stuber, Washington, D. C., of counsel.

Before DAVIS, NICHOLS, and KASHIWA, Judges.

KASHIWA, Judge.

This case is before the court on the parties' cross motions for summary judgment.

After consideration of the briefs and oral argument, we grant the defendant's motion and dismiss the plaintiff's petition. We hold in this Medicare Act suit that the defendant may retroactively adjust the previously allowed costs for depreciation claimed by plaintiff where upon the sale of the hospital the selling price exceeds its historical cost. Such adjustment is allowed in spite of a public trust impressed upon a portion of the sales proceeds by the State of Washington. Our jurisdiction to resolve this controversy is set forth in *Whitecliff, Inc. v. United States,* 210 Ct.Cl. 53, 536 F.2d 347 (1976), *cert. denied,* 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977).

The plaintiff is an Illinois non-profit corporation authorized to do business in the State of Washington.[1] Plaintiff purchased Maynard Hospital, located in Seattle, Washington, in 1960 and maintained it as an entity separate from its other operations. At all relevant times plaintiff was a "provider of services" under the Medicare Act. 42 U.S.C. §§ 1395 *et seq.* (1970). As a Medicare provider, plaintiff received periodic payments from the then Department of Health, Education, and Welfare to cover the costs of services rendered to Medicare patients. 42 U.S.C. § 1395cc. Pursuant to 20 C.F.R. § 405.415,[2] one "allowable cost" for which plaintiff was reimbursed was depreciation of the hospital. These payments were made through Aetna Life and Casualty Company (the intermediary), plaintiff's intermediary for purposes of Maynard Hospital. *See* 42 U.S.C. § 1395h.

On March 31, 1971, plaintiff sold Maynard Hospital and terminated its participation in the Medicare program for that hospital. The selling price was approximately $2.9 million, an amount in excess of the historical cost of the hospital.

Because of gifts to Maynard Hospital while owned by plaintiff and because May-

---

1. Plaintiff has been determined to be exempt from federal income taxation.

2. During the time period involved in this case, the regulations were contained in 20 C.F.R. Due to a reorganization of the regulations, they are now contained in 42 C.F.R. Reference to the regulations will be to 20 C.F.R., and hereafter 20 C.F.R. will be deleted in the citations.

nard Hospital was operated by plaintiff as a non-profit corporation, the State of Washington, by court order, impressed $1 million[3] of the proceeds of the sale with a trust in favor of the public of the State of Washington. Relying on the *cy pres* doctrine, such court, as a condition of approval of the sale, required the impressed funds be transferred to Riverton General Hospital, Seattle, Washington (also owned by plaintiff), to be used only as specified in the order. Furthermore, assets of Riverton General Hospital were also impressed with a public trust as a result of the same proceedings. The balance of the sales proceeds was released to plaintiff without restriction.

As a result of the sale, the cost period at issue ended March 31, 1971. Plaintiff submitted a cost report pursuant to section 405.406.[4] On the basis of its audit of such cost report (authorized by section 405.-454(f)) on June 29, 1973, the intermediary issued a revised cost report and Notice of Program Reimbursement. Acting pursuant to section 405.415(f), the intermediary demanded payment of $158,592 from plaintiff.

Through a somewhat complex course of events, the defendant ultimately prevailed on its claim at the administrative level. Plaintiff vigorously questions the legality of the administrative review process followed below. A chronology of the proceedings follows.

On September 21, 1973, plaintiff requested a hearing relating to the June 29, 1973, intermediary decision. Such a hearing was held and a decision was rendered by the intermediary hearing officer on October 9, 1974. This decision was in favor of plaintiff. Pursuant to the October 9, 1974, decision, the intermediary issued a revised Notice of Program Reimbursement which indicated $211,321 was owed plaintiff. This amount was thereafter transmitted to plaintiff.

On February 22, 1977, the Social Security Administration asserted that the hearing officer's decision of October 9, 1974, was inconsistent "with the applicable law, regulations or general instructions" and directed that such decision be reopened pursuant to section 405.1885(b). Plaintiff was so informed by the intermediary hearing officer on May 17, 1977. Thereafter, on July 19, 1977, a revised Notice of Program Reimbursement was issued. This notice indicated plaintiff owed the Medicare program $211,321.

To complete the administrative proceedings, plaintiff sought, and received, further administrative review from the Director of the Medicare Bureau. On August 11, 1977, and February 10, 1978, the Director affirmed the validity of the reopening decision in favor of defendant and affirmed the reopening decision as the final appellate action authorized by statute or regulation.

The issues before us are: (1) whether defendant's reopening of the intermediary decision was timely; (2) whether such reopening was arbitrary and capricious, due to the length of time elapsing between the relevant actions; and (3) whether, on the merits, and in light of the public trust imposed by the State of Washington, the depreciation claimed by the provider is subject to reimbursement to the Medicare program under section 405.415(f).

## I. Timeliness of the Reopening

The cost period at issue ended March 31, 1971. At that time there was no regulatory provision providing a formal hearing process to review provider cost determinations. Both parties agree that prior to the publication of the 1972 regulation, section 405.-499g, the ability to obtain review varied from intermediary to intermediary.

Effective May 27, 1972, section 405.499g[5] was published and it provided a formal re-

---

3. This amount approximates the difference between the sales price and the historical cost of the hospital.

4. Because computation of reasonable costs can be accomplished only after the rendition of services, payments are made at an estimated rate during a provider's fiscal year. 42 U.S.C.

§ 1395g; section 405.405. At the end of each fiscal year, the provider then submits a cost report. Section 405.406.

5. Section 405.499g provides, in relevant part:

"§ 405.499g Reopening of an intermediary's determination on the amount of program reimbursement and a decision of a hearing officer.

view procedure. Section 405.499g was subsequently revised and redesignated on September 26, 1974, becoming section 405.1885.[6]

The plaintiff's argument, as we understand it, can be summarized as follows. Section 405.499g is the appropriate regulation governing the reopening at issue. Section 405.499g(e) provides that a reopening must take place within 3 years from the intermediary's "final determination." The intermediary's determination of June 29, 1973, was the "final determination" referred to in section 405.499g(e); thus, defendant's attempted reopening in 1977 was

"(a) *Reopening a determination.* A determination on the amount of program reimbursement contained in a notice of program reimbursement may be reopened by the intermediary, either on its own motion or at the request of the provider, at any time within 3 years of the date of such notice to correct the amount of program reimbursement due the provider or due the health insurance program. No such determination may be reopened after such 3-year period except as provided in paragraph (d) of this section.

"(b) *Reopening a decision.* A decision of a hearing officer or panel of hearing officers may be reopened with respect to findings on matters in issue at the hearing, by such officer or such panel, as the case may be, either on the motion of such officer or panel or on the motion of a party to the hearing, at any time within 3 years of the date of the notice of hearing decision, to correct any matter in issue at the hearing. No such decision may be reopened after such 3-year period except as provided in paragraph (d) of this section. If the hearing officer or a majority of such panel is unavailable for reasons including death, termination of employment, illness, or leave of absence, the intermediary may select another hearing officer or, where a panel is involved, such number of hearing officers as may be necessary so that a majority of such panel is constituted.

"(c) *Reopening by the intermediary.* A determination, as specified in paragraph (a) of this section, and a decision, as specified in paragraph (b) of this section, shall be reopened and corrected by an intermediary if, within 3 years of the date specified in paragraph (a) or (b) of this section, as the case may be, the Social Security Administration notifies the intermediary that such determination or such decision is inconsistent with the applicable law, regulations, or general instructions issued by the Social Security Administration in accordance with the Secretary's agreement with the intermediary.

\* \* \* \* \* \*

"(e) *Applicability.* The provisions of this section shall apply to cost reporting periods ending on or after December 31, 1971. The provisions of this section shall also be applicable to any cost reporting period ending before December 31, 1971, and for any such period the 3-year period referred to in this section shall commence on the date of the intermediary's final determination on the cost report filed for such cost reporting period."

6. Section 405.1885 provides, in relevant part:

"§ 405.1885 Reopening a determination or decision.

"(a) A determination of an intermediary, a decision by a hearing officer or panel of hearing officers, a decision by the Board, or a decision of the Secretary may be reopened with respect to findings on matters at issue in such determination or decision, by such intermediary officer or panel of hearing officers, Board, or Secretary, as the case may be, either on motion of such intermediary officer or panel of hearing officers, Board, or Secretary, or on the motion of the provider affected by such determination or decision to revise any matter in issue at any such proceedings. Any such request to reopen must be made within 3 years of the date of the notice of the intermediary or Board hearing decision, or where there has been no such decision, any such request to reopen must be made within 3 years of the date of notice of the intermediary determination. No such determination or decision may be reopened after such 3-year period except as provided in paragraphs (d) and (e) of this section.

"(b) A determination or a hearing decision rendered by the intermediary shall be reopened and revised by the intermediary if, within the aforementioned 3-year period, the Social Security Administration notifies the intermediary that such determination or decision is inconsistent with the applicable law, regulations, or general instructions issued by the Social Security Administration in accordance with the Secretary's agreement with the intermediary.

\* \* \* \* \* \*

"(e) Paragraphs (a) and (b) of this section apply to determinations on cost reporting periods ending on or after December 31, 1971. (See § 405.1801(c).) However, the 3-year period described shall also apply to determinations with respect to cost reporting periods ending prior to December 31, 1971, but only if the reopening action was undertaken after May 27, 1972 (the effective date of regulations which, prior to the publication of this Subpart R, governed the reopening of such determinations)."

not timely.[7] Alternatively, plaintiff asserts that even if section 405.1885 does apply, section 405.1885(e) discloses that the drafters of the new regulation intended the time frame provided in section 405.499g(e) be applied to cost reports ending prior to December 31, 1971.

Defendant, on the other hand, asserts section 405.1885 applies to this reopening. Furthermore, it argues, section 405.1885(b), in conjunction with section 405.1885(e), allows the reopening because it occurred after May 27, 1972, and within 3 years from the date of the intermediary hearing officer's decision (*i.e.*, the October 9, 1974, decision). In the alternative, defendant claims it must prevail even if the time frame of section 405.499g(e) is applied because the October 9, 1974, decision was the "final determination" referred to in that regulation and the reopening was within 3 years thereof.

Section 405.499g(a) and (b) provides a time frame for reopening intermediary determinations and hearing officer decisions (3 years from the date of notice of the determination or decision; *see* note 5, *supra*). The controversy occurs here because for a cost reporting period ending before December 31, 1971, under section 405.-499g(e), "the 3-year period [for reopening commences] on the date of the intermediary's *final determination* on the cost report filed for such cost reporting period." (Emphasis supplied.) "Final determination" is nowhere defined in the regulations.

■ As mentioned above, plaintiff argues the reopening was untimely under either section 405.499g or section 405.1885 because the 3-year period runs from the intermediary's determination of June 29, 1973. We disagree with plaintiff. Initially, we hold the "final determination" intended by section 405.499g(e) was the hearing officer's decision of October 9, 1974. Finality would only be accorded the intermediary

determination if it were not the subject of a hearing officer's review. Some intermediaries did not provide review of an intermediary determination in pre-1972 cost periods, and in those instances such intermediaries' determinations could be the "final determination" intended in section 405.-499g(e). Plaintiff's intermediary determination of June 29, 1973, however, was the subject of review by a hearing officer; and such review deprived the June 29, 1973, determination of finality. We find support for this position in the preamble to section 405.499g, 37 Fed.Reg. 10,723 (1972):

> * * * Two new sections have been added (§§ 405.499g and 405.499h) which would attach finality to a hearing officer's decision after a 3-year period before the end of which the decision could be revised by a hearing officer if he found the decision to be incorrect, or would have to be revised at the request of the Social Security Administration if it found that the decision was not in accord with the law, regulations, or general instructions. Consistent with this policy, a similar rule of finality is included for an intermediary's determinations on cost reports which are not the subject of a hearing. * * *

Thus in our view, section 405.499g(e) does not intend finality to rest in an intermediary determination which was subjected to a hearing.[8]

■ Moreover, we find the defendant was correct in applying section 405.1885 to these facts. The parenthetical phrase in section 405.1885(e) indicates quite clearly that section 405.1885 now governs reopenings:

> * * * However, the 3-year period described shall also apply to determinations with respect to cost reporting periods ending prior to December 31, 1971, but only if the reopening action was under-

---

7. Plaintiff places great weight on a form letter from the intermediary referring to the June 29, 1973, determination as a "final determination."

8. We believe the letter relied on by plaintiff, *see* note 7, *supra*, uses the term "final determina-

tion" in a different sense than that intended by the regulations. Furthermore, such a letter by the intermediary does not bind the Government to an interpretation of the regulations.

taken after May 27, 1972 (the effective date of regulations which, *prior to the publication of this Subpart R*, governed the reopening of such determinations). [Emphasis supplied.]

Also, we are assisted in this decision by Social Security Ruling, SSR 75–21, C.B. 1975, p. 113, *republished*, HCFAR–78–32, C.B. 1978, p. 81.[9] This ruling, issued before the instant litigation began, ruled that section 405.1885 applied to a pre-1972 cost period.[10]

Therefore, in light of our holding above, under section 405.1885(b) and (e) (regardless of whether the time frame of section 405.-499g(e) is incorporated), the defendant's reopening was timely. Additionally, with the exception of only a vague and generalized suggestion, plaintiff raises no obstacle to the retroactive application of the regulation. We find the regulations are limited and reasonable and create no unjust result. Hence, we hold the retroactive application is proper. *See Welch v. Henry*, 305 U.S. 134, 147, 59 S.Ct. 121, 125, 83 L.Ed. 87 (1938); *Summit Nursing Home, Inc. v. United States*, 215 Ct.Cl. 581, 592–595, 572 F.2d 737, 742–744 (1978), and the cases cited therein. *See generally* K. Davis, *Administrative Law Treatise*, Vol. 2 (2d ed.), § 7.23.

 Since we hold the reopening was timely, we must now decide whether the delay in such reopening rendered it arbitrary and capricious.

Although the period elapsing before defendant directed the decision be reopened was a long one, it was within the 3-year period provided in the regulations. That is important. We have been shown no evidence of bad faith on the part of the defendant nor can we find any. As defendant points out, the Medicare program has a tremendous burden in processing all its necessary administrative duties; with such a workload, we feel it would be unduly burdensome on the Medicare program to hold this timely claim to be an arbitrary action simply due to the length of time taken to process it. The 3-year period provided in the regulations is a reasonable attempt to effectuate the purposes of the Act, and we will not interfere with the actions of defendant under these facts.[11]

Plaintiff also asserts that if it had a later cost period it would have been entitled to a Provider Reimbursement Review Board Hearing (Board), subject to only 60 days' review by the Secretary. *See* 42 U.S.C. § 1395*oo*(f)(1) (1976). Hence, it is argued, because the regulations at issue permit 3 years to reopen a decision, the longer period is arbitrary. Without ruling on the correctness of the procedure alleged by plaintiff, we find this change in the Medicare Act an improper ground to base a finding of arbitrariness. The Board review constitutes a significant procedural change and any comparison to procedures before and after that change is unhelpful here.

Therefore, while any inconvenience resulting to plaintiff from the delay is unfortunate, we do not see how it can be characterized as arbitrary or capricious.

## II. *The Merits*

Defendant asserts it is entitled to a retroactive adjustment of the previously allowed costs to the extent such costs encompassed allowances for depreciation of Maynard

---

**9.** This ruling was republished when the Health Care Financing Administration became responsible for administration of the Medicare program.

**10.** Defendant strongly urges us to apply the rationale of *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 413–414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945) (in interpreting a regulation the administrative interpretation is of controlling weight unless it is plainly erroneous or inconsistent with the regulation), *to* several administrative pronouncements, largely dealing with this case. We, however, fail to find suffi-cient, consistent application of the Secretary's interpretation to give it the weight mandated in the *Bowles* decision.

**11.** Defendant also suggests that a reason for the delay was the confusion caused by a district court decision holding against the agency's interpretation of the depreciation regulation, which confusion ended when that decision was later reversed by the Ninth Circuit in *Hazelwood Chronic and Convalescent Hospital, Inc. v. Weinberger*, 543 F.2d 703 (9th Cir. 1976), *rev'd and remanded on other grounds*, 430 U.S. 952, 97 S.Ct. 1595, 51 L.Ed.2d 801 (1977).

Hospital. Defendant bases this assertion on the fact that the sales price of Maynard Hospital was in excess of its historical cost [12] and, as such, section 405.415(f) [13] requires the adjustment.

Plaintiff raises what appears to be a novel question. Essentially, plaintiff argues that since $1 million of the sales proceeds was impressed with a public trust by the State of Washington, that $1 million should not be included in the sales proceeds in determining if a gain was realized.

The relevant statutory scheme intends providers to receive payments based on the "reasonable costs" of their services. 42 U.S.C. § 1395f(b). "Reasonable cost" is defined, in relevant part, as follows:

> * * * The reasonable cost of any services shall be the cost *actually incurred,* * * *.
>
> * * * * * *
>
> * * * Such regulations shall (i) take into account both direct and indirect costs of providers of services * * *, and (ii) provide for the making of suitable retroactive corrective adjustments where, for a provider of services for any fiscal period, the aggregate reimbursement produced by the methods of determining costs proves to be either inadequate or excessive.[14] [42 U.S.C. § 1395x(v)(1)(A) (Supp. II 1972); emphasis supplied.]

The regulations then provide that interim payments be made on an estimated basis subject to a later audit and retroactive corrective adjustment (to correct excessive or deficient payments to the provider). Section 405.454. As such, the statutory and regulatory scheme is intended to reflect the actual costs incurred by the provider and approved by the Secretary as reasonable.

Turning specifically to the issue of allowable reimbursement for depreciation costs, we find section 405.415(f) provides for an adjustment in an attempt to reflect the actual depreciation experienced by the provider. We have previously upheld section 405.415(d)(3), which provides for an adjustment where accelerated depreciation was claimed by the provider. *Summit Nursing Home, Inc. v. United States, supra. Accord, Fairfax Nursing Center, Inc. v. Califano,* 590 F.2d 1297 (4th Cir. 1979); *Adams Nursing Home of Williamstown, Inc. v. Mathews,* 548 F.2d 1077 (1st Cir. 1977); *Springdale Convalescent Center v. Mathews,* 545 F.2d 943 (5th Cir. 1977). And the particular regulation at issue here has been upheld by the Seventh Circuit. *Professional Medical Care Home, Inc. v. Harris,* 644 F.2d 589 (7th Cir. 1980).

We agree with the Seventh Circuit, which held:

> The ultimate problem is whether, over time, an estimated amount of depreciation is a "cost actually incurred" as provided in 1395x(v)(1)(A). In our opinion the Secretary has authority to require providers who leave the program to return allowances for straight line as well as accelerated depreciation in order to avoid allowances for depreciation which turn out not to have been a "cost actually incurred." [644 F.2d at 593.]

As such, we also uphold the validity of section 405.415(f).

The only question left to be resolved then is whether the imposition of a public trust on $1 million of the proceeds of the sale

---

12. Historical cost is defined in section 405.-415(b)(1) as the cost incurred by the present owner in acquiring an asset.

13. Section 405.415(f) provides:

"(f) *Gains and losses on disposal of assets.* Gains and losses realized from the disposal of depreciable assets while a provider is participating in the program, or within 1 year after the provider terminates participation in the program, are to be included in the determination of allowable cost. The extent to which such gains and losses are includable is calculat-

ed on a proration basis recognizing the amount of depreciation charged under the program in relation to the amount of depreciation, if any, charged or assumed in a period prior to the provider's participation in the program, and in the period after the provider's participation in the program when the sale takes place within 1 year after termination."

14. Accordingly, section 405.451 requires that provider reimbursement be based on "reasonable cost."

should disturb the normal operations of section 405.415(f). We think not.

The purpose of the regulatory scheme is to reflect as accurately as possible the actual depreciation which occurred to the structure. The sales price agreed upon after good faith, arm's-length bargaining is one of the most, if not the most, accurate methods of ascribing a current fair market value to the structure. *Cf.* section 405.415(b)(2). Since in this case that arm's-length bargaining resulted in a sales price in excess of the historical cost of the hospital, we hold it is reasonable for the Secretary to determine that in fact no depreciation of the hospital occurred.[15] Nor do we perceive how the public trust imposed on a portion of the proceeds can alter the fact that there was no actual depreciation.

The plaintiff's complaint seems to be that the action by the State of Washington ensured that the value of the proceeds of the sale did not go to the owner of the hospital. Since plaintiff is a non-profit corporation, the profits could not inure to the benefit of an individual. This is provided in plaintiff's Articles of Incorporation and is also specifically required if, *inter alia*, plaintiff is to maintain its tax-exempt status. I.R.C. § 501(c)(3); *see* note 1, *supra*. Further, such impressed funds are still in the hands of the Stewards Foundation, albeit subject to restrictions.

Under Washington common law, courts of equity have jurisdiction over charitable corporations to protect the public interest; the State Attorney General is the representative of that interest. *Kenney Presbyterian Home v. State of Washington*, 174 Wash. 19, 24 P.2d 403 (1933).[16] This is common throughout the nation. 15 Am. Jur.2d, *Charities*, § 144 (1976). *See also* 124 A.L.R. 1237 (1940). The specific act of ordering the transfer of the impressed funds to Riverton General Hospital was effectuated by the court under the *cy pres* doctrine. Again, we do not perceive this to be an atypical action. Thus, we do not believe the effects of the Washington court action are necessarily unusual. *Cf.* R.C.W. 19.10.090 (the chapter is intended to make the laws of Washington uniform with the laws of other states on this subject). To adopt plaintiff's line of reasoning would perhaps require limiting the application of depreciation readjustments to for-profit organizations only. Under these facts, we see no justification for such a limitation. *Cf. State of Tennessee v. Califano*, 631 F.2d 89 (6th Cir. 1980) (the legality of section 405.415(d)(3) (accelerated depreciation reallocation) was upheld against a state-owned hospital). Plaintiff must be deemed to have been aware of the legal consequences resulting from the sale of the hospital. We feel it is more appropriate that such consequences be dealt with by plaintiff and the buyer rather than by plaintiff and the Medicare program.

## CONCLUSION

After consideration of all the parties' arguments, for the reasons discussed above, we grant defendant's motion and deny plaintiff's cross motion. The petition is accordingly dismissed.

---

15. Under our interpretation of the relevant regulations at issue in this case, the question is distilled to one of law. Hence, we find no need to order a remand to resolve the facts plaintiff alleges are in dispute.

16. This common law principle is codified at R.C.W. 19.10.010 *et seq.*