**ST. MARK'S CHARITIES Liquidating Trust, George E. Bates, Trustee, Plaintiff,**

**v.**

**Donna E. SHALALA, Secretary of Health and Human Services, Defendant.**

No. 2:93–CV–0565–S.

United States District Court,
D. Utah,
Central Division.

Jan. 27, 1997.

Stewart M. Hanson, Jr., Carl F. Huefner, Charles P. Sampson, Suitter Axland & Hanson, Salt Lake City, UT, Robert A. Klelin, Foley Lardner Weissburg & Aronson, Los Angeles, CA, for Plaintiff.

Scott M. Matheson, Jr., U.S. Atty., Jill N. Parrish, Asst. U.S. Atty., District of Utah, Salt Lake City, UT, for Defendant.

## ORDER

SAM, District Judge.

Before the court are Objections to Magistrate's Report & Recommendation and Request for Hearing filed by plaintiff St. Mark's Charities Liquidating Trust in which plaintiff objects to a Report and Recommendation signed by the magistrate judge on November 4, 1996.

The court, having considered the matter *de novo,* concludes the Report and Recommendation is correct in every material respect and adopts it as the court's own opinion. Accordingly, the court hereby AFFIRMS the final administrative decision of defendant Donna E. Shalala, Secretary of Health and Human Services, and DENIES plaintiff's motion for summary judgment.

## REPORT & RECOMMENDATION

BOYCE, United States Magistrate Judge.

Plaintiff filed suit under 42 U.S.C. § 1395oo(f)(1) seeking judicial review of the final determination of the Secretary that the government is entitled to recoup depreciation payments received by plaintiff under the Medicare program. The case was referred to the magistrate judge under 28 U.S.C. 636(b)(1)(B) and is presently before the court on plaintiff's motion for summary judgment. (File entry 19.)

### I. PROCEDURAL BACKGROUND

Plaintiff is the successor to St. Mark's Hospital, a Utah non-profit corporation, which formerly owned and operated St. Mark's Hospital in Salt Lake City, Utah. St. Mark's Hospital was built in 1973 and was certified as a Medicare provider from 1973 until its sale effective December 31, 1987. Because the sale price of the hospital's depreciable assets exceeded their book value, the fiscal intermediary, Blue Cross and Blue Shield of Utah, acting on behalf of the Secre-

tary, determined that the government was entitled to recoup all depreciation payments received by St. Mark's during the years the assets were used in providing Medicare services (1973–87).

St. Mark's appealed the intermediary's determination to the Provider Reimbursement Review Board ("PRRB") by letter dated January 29, 1991. (A.R. at 818–19.) On July 28, 1992, an administrative hearing was held pursuant to 42 U.S.C. 1395oo. (A.R. at 78–214.) On February 19, 1993, the PRRB issued its decision concluding that the intermediary's adjustments recapturing depreciation payments were correct. (A.R. at 16–28.) The Administrator of the Health Care Financing Administration ("HCFA") reviewed the decision of the PRRB pursuant to 42 U.S.C. § 1395oo(f)(1) and issued a decision affirming it on April 15, 1993. (A.R. at 2–6.) The decision of the Administrator is the final agency determination and is subject to judicial review under 42 U.S.C. § 1395oo(f)(1).

## II. MEDICARE STATUTORY & REGULATORY PROVISIONS

Under the Medicare Act, certified Medicare providers are reimbursed for the reasonable cost of services provided to Medicare beneficiaries. "Reasonable cost" is defined as "the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services." 42 U.S.C. § 1395x(v)(1)(A). In order to receive reimbursement, a provider must submit a "cost report" showing its total costs for the fiscal year and the proportion of the costs that should be allocated to the Medicare program. 42 C.F.R. §§ 413.20(b), 413.24(f)(1), (2) (1995). The fiscal intermediary reviews the cost report and advises the provider of its final determination as to the amount of Medicare reimbursement allowable for the year. 42 C.F.R. § 405.1803.

Under the regulations promulgated by the Secretary, a Medicare provider is entitled to reimbursement for the indirect cost of using tangible assets through an allowance for depreciation. 42 C.F.R. § 413.134. Depreciation is calculated using the straight-line method, based on the historical cost of the asset allocated over its estimated useful life in accordance with American Hospital Association guidelines. *Id.*

Upon disposal of the asset, the regulations provide for adjustment of the allowable cost determination. If the disposal results in a gain, *i.e.*, the sale price exceeds the book value of the asset, the Secretary may recoup depreciation expenses paid to the provider. The adjustment for a gain is limited to the actual amount of depreciation previously allowed as Medicare allowable costs. 42 C.F.R. § 413.134(f). Conversely, if the sale price is less than the depreciated book value of the asset, the provider is entitled to reimbursement for Medicare's proportionate share of the loss. *Id.* The amount of an adjustment allowed for a loss is limited to the undepreciated basis of the asset permitted under the program. *Id.*

## III. FACTUAL BACKGROUND

Effective December 31, 1987, St. Mark's sold its hospital to a third-party purchaser. The portion of the sales price allocated to the building and fixed assets was approximately $27.4 million. (A.R. at 119.) On the date of the sale, the net book value, *i.e.*, the undepreciated basis, was $7.6 million. (A.R. at 229.) St. Mark's thus had a gain on the sale of approximately $19.8 million (appraised value of assets minus net book value). However, because the historical cost of the assets was only approximately $15.4 million, the adjustment for depreciation was limited to the accumulated depreciation amounting to approximately $7.8 million (historical cost minus net book value).

In its final cost report, St. Mark's did not make an adjustment in its allowable costs to reflect the gain on the sale of its assets. Consequently, the intermediary issued a Notice of Program Reimbursement dated September 19, 1990, in which it made an adjustment for the depreciation St. Mark's had previously claimed under the Medicare program. (A.R. at 804–14.)

## IV. STANDARD FOR SUMMARY JUDGMENT

Summary judgment should be entered if the record shows that "there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

A party moving for summary judgment bears the initial burden of informing the court of the basis of its motion. It may do so by identifying portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, that demonstrate that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In response, the nonmoving party must go beyond the pleadings and by affidavits, or by depositions, answers to interrogatories, and admissions, designate specific facts showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553. If the nonmoving party fails to meet this burden, summary judgment is mandated. *See id.* at 322, 106 S.Ct. at 2552.

## V. DISCUSSION

### A. *Standard of Review*

Pursuant to 42 U.S.C. § 1395oo(f)(1), judicial review is governed by Chapter 7 of the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706. *Thomas Jefferson Univ. v. Shalala,* 512 U.S. 504, 510–11, 114 S.Ct. 2381, 2386, 129 L.Ed.2d 405 (1994). Under the APA, the court's review of the Secretary's decision is limited to whether the administrative decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(A), (C).

It is well-settled that a reviewing court should accord considerable weight to an agency's construction of the statutory scheme that it is entrusted to administer. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984); *Humana, Inc. v. Heckler,* 758 F.2d 696, 699 (D.C.Cir.1985) (stating that the Secretary's interpretation of the Medicare statutes is

entitled to great deference), *cert. denied,* 474 U.S. 1055, 106 S.Ct. 791, 88 L.Ed.2d 769 (1986). Similarly, a court must give substantial deference to an agency's interpretation of its own regulations. *Thomas Jefferson Univ.,* 512 U.S. at 510–11, 114 S.Ct. at 2386; *Martin v. Occupational Safety and Health Review Comm'n,* 499 U.S. 144, 150–51, 111 S.Ct. 1171, 1175–76, 113 L.Ed.2d 117 (1991).

Under the arbitrary and capricious standard, the court exercises a narrow scope of review and may not substitute its judgment for that of the agency. *Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983); *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971); *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.,* 419 U.S. 281, 285, 95 S.Ct. 438, 441–42, 42 L.Ed.2d 447 (1974). The court considers only whether the agency decision is based upon a consideration of relevant factors and whether there has been a clear error in judgment. *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43, 103 S.Ct. at 2866–67; *Bowman Transp., Inc.,* 419 U.S. at 285, 95 S.Ct. at 441–42.

Nevertheless, the APA requires the court to engage in a substantial inquiry. While the agency decision is entitled to a presumption of regularity, the presumption does not shield agency actions from a thorough, in-depth review. *Citizens to Preserve Overton Park, Inc.,* 401 U.S. at 415, 91 S.Ct. at 823; *Olenhouse v. Commodity Credit Corp.,* 42 F.3d 1560, 1574 (10th Cir.1994).

### B. *Statutory Basis for Depreciation Adjustment*

██ Plaintiff argues that there is no statutory basis for the government to recoup payments for past depreciation expense.

In 1966, the Secretary promulgated a regulation that allowed an adjustment for depreciation for a gain or loss on the disposal of depreciable assets.[1] In 1984, Congress

---

1. This regulation was published as a proposed rule on June 2, 1966 at 31 Fed.Reg. 7864, 7867, and as a final rule on November 22, 1966 at 31 Fed.Reg. 14,808, 14,811. Copies of the proposed

and final rules are attached to defendant's brief, file entry 22, as exhibits A & B, respectively. The rule was subsequently codified at former 42 C.F.R. 405.415(f) (1972). This regulation was

amended the Medicare Act to incorporate the regulation as it existed on June 1, 1984. 42 U.S.C. § 1395x(v)(1)(O)(ii).

Plaintiff contends that prior to the 1984 amendment, the only statutory basis for the Secretary's regulation was a provision in the Medicare Act which gave the Secretary authority to implement regulations to "provide for the making of suitable retroactive corrective adjustments where, for a provider of services for any fiscal period, the aggregate reimbursement produced by the methods of determining costs proves to be either inadequate or excessive." 42 U.S.C. § 1395x(v)(1)(A)(ii) ("clause (ii)"). Plaintiff contends that under existing case law, it is clear that clause (ii) does not authorize retroactive adjustments to recoup depreciation payments made in prior years, but instead has been construed as a year-end book-balancing provision that allows adjustments in payments made in the current year to bring them into line with costs actually incurred as determined after an annual audit. Plaintiff asserts that there was thus no statutory basis to recapture depreciation payments until Congress amended the Medicare Act in 1984 to incorporate the Secretary's regulation allowing the recapture of depreciation. In addition, plaintiff contends that even if the 1984 amendment applies to the circumstances of this case, it would only apply as of the effective date of the amendment, July 18, 1984, and could not be applied retroactively.

The Secretary responds that clause (ii) is not the only statutory basis for the recapture regulation and that other statutory provisions provide the necessary statutory authority. The Secretary further argues that even if the recapture regulations were not statutorily authorized prior to 1984, that fact is irrelevant since the sale of plaintiff's assets did not occur until 1987, and the 1984 amendment is thus applicable to the instant case.

The Secretary states that in addition to clause (ii), the recapture regulation was also promulgated under 42 U.S.C. § 1395x(v), defining what constitutes reasonable cost, and under the general rulemaking provision, 42 U.S.C. § 1395hh. *See* 31 Fed.Reg. 7864

later redesignated as 42 C.F.R. § 413.134. 51

(1966); 31 Fed.Reg. 14,808 (1966). (Def.'s ex. A & B.)

As the Secretary points out, the District of Columbia Circuit has specifically addressed and rejected the argument that plaintiff makes here. The court stated as follows:

[T]he recapture regulation was not promulgated solely under the auspices of section (ii). The Secretary relied upon 42 U.S.C. § 1395x(v) generally—which includes section (ii)—and also upon section 1395hh. *See* 31 Fed.Reg. 7864 (1966) (citing *inter alia* §§ 1861(v) and 1871 of the Social Security Act as the authority for the regulations). Section 1395x(v)(1)(A) authorizes the Secretary to issue regulations setting the methods to be used in ascertaining the reasonable costs of providing Medicare services. And under section 1395hh, the Secretary has general authority to prescribe regulations "as may be necessary to carry out the administration of" Medicare.

Taken together, these sections provide ample authority to support regulations designed to recapture supposedly excessive depreciation at the time of sale of the depreciated asset rather than on a year-to-year basis.

*Whitecliff, Inc. v. Shalala,* 20 F.3d 488, 491 (D.C.Cir.1994) (citations omitted).

The court agrees with the D.C.Circuit that there was ample statutory authority to support the Secretary's recapture regulation prior to 1984. Moreover, Congress's incorporation of the Secretary's recapture regulation in the 1984 amendment lends support to the argument that the Secretary correctly interpreted Congressional intent when promulgating the earlier regulation. Because the court finds that the regulation was statutorily authorized at the time it was implemented, the court does not address the issue of the retroactivity of the 1984 amendment.

## C. *Failure to Reimburse for Actual Costs*

■ Under the Medicare statute, the reasonable cost of services is the cost actually incurred excluding any part of the cost found to be unnecessary in the efficient delivery of health care services. 42 U.S.C.

Fed.Reg. 34,790 (1986).

§ 1395x(v)(1)(A). Plaintiff asserts that the purpose of payment for depreciation expense is to compensate the provider for the consumption or using up of its assets. Plaintiff argues that it is undeniable that a portion of its assets were consumed over the fourteen years they were used in the Medicare program; thus, recapture of the depreciation payments deprives it of a cost actually incurred. Plaintiff contends that even though the sales price of the assets was greater than both the depreciated book value and the historical cost, the sales price still reflects the fact that the assets were partially consumed and, if this were not the case, the price would have been higher.

As the Secretary points out, this argument has been rejected by the majority of courts that have considered it, including the First, Seventh, and Eighth Circuits, and the Court of Claims. See *Creighton Omaha Regional Health Care Corp. v. Sullivan*, 950 F.2d 563, 565 (8th Cir.1991); *Hoodkroft Convalescent Ctr., Inc. v. New Hampshire, Div. of Human Servs.*, 879 F.2d 968, 972–75 (1st Cir.1989) (interpreting a similar Medicaid recapture provision), *cert. denied*, 493 U.S. 1020, 110 S.Ct. 720, 107 L.Ed.2d 740 (1990); *Professional Medical Care Home, Inc. v. Harris*, 644 F.2d 589, 593–94 (7th Cir.1980); *Stewards Found. v. United States*, 228 Ct.Cl. 89, 654 F.2d 28, 34 (1981).

The Courts of Appeals for the District of Columbia and Eleventh Circuits have reached contrary results. *Whitecliff*, 20 F.3d at 491–94; *Mercy Community Hosp. v. Heckler*, 781 F.2d 1552 (11th Cir.1986). However, the *Whitecliff* court noted that the 1984 amendment ratifying the Secretary's recapture regulation had no bearing on that case because all of the events relevant to the disposition of the case occurred prior to the enactment of the amendment. *Whitecliff*, 20 F.3d at 489 n. 1. Further, the *Whitecliff* court noted that in cases arising after 1984, the amendment apparently would compel a contrary result. *See id.* at 494 (stating that "Congress has subsequently explicitly endorsed the Secretary's regulations, so presumably it is not necessary for the Secretary to struggle with the problem in the future.").

Thus, only the Eleventh Circuit supports plaintiff's position.

As the Seventh Circuit has observed, any depreciation formula necessarily produces an inexact estimate of the consumption of an asset; thus, it is difficult to determine whether any particular amount is a cost actually incurred. *Professional Medical Care Home, Inc. v. Harris*, 644 F.2d at 593–94.

The First Circuit has explained the problem as follows:

> [T]he law can, and often does, use the concept of "depreciation costs" to refer not to a physical fact (*e.g.*, that a piece of equipment is worn), nor to an economic fact (*e.g.*, that wear and tear makes it less valuable than a new piece of equipment), but rather to an accounting fact, namely, a certain percentage of the nominal, historical price paid for the item. Of course, the percentage is not totally arbitrary; it should in general reflect the economic fact that the value of the equipment will sink to zero over time. But since it is difficult to devise a depreciation formula that will accurately reflect short-run changes in economic value, a depreciation allowance typically "represents, not the actual changes in value from year to year but a stylized allowance for a downward trend." ....
> This "stylized allowance" promises no more than that an investor will eventually receive back the historical, nominal dollars that he invested in an asset.

*Hoodkroft*, 879 F.2d at 973 (citations omitted).

It is undisputed that St. Mark's disposed of its assets at a price that exceeded both the historical cost and the net book value. Because the depreciation allowance is intended to compensate for the loss of the asset's value over its useful life, the HCFA Administrator properly concluded that it was inappropriate for St. Mark's to retain the past depreciation payments. Accordingly, plaintiff cannot succeed on this argument.

D. *Failure to Consider the Effect of Inflation & Market Forces*

█ Plaintiff states that it is undisputed that the gain realized on the sale of its assets

was due entirely to inflation and other market factors. Plaintiff states that based on cost indices reflecting increased construction costs between 1973 and 1987, it would have cost approximately $38.6 million to replace St. Mark's assets as of the sale date. (See A.R. 120–22, 229.) Since the assets brought a price of only approximately $27.4 million, they were sold at a price $11 million below replacement cost. Plaintiff argues that since the accumulated depreciation on the assets was only $7.6 million, the "gain" represented only an increased cost of replacing the assets, not an actual gain or profit from the sale itself. In addition, plaintiff states that during the period 1973 to 1987, there was a "seller's market" for hospital sales which also drove up the ultimate sales price. (A.R. 125.)

In support of this argument, plaintiff relies on *Mercy Community Hosp. v. Heckler,* 781 F.2d 1552 (11th Cir.1986), which held that the Secretary can recapture depreciation expenses only where the provider has been overcompensated for the consumption of its assets; for example, as a result of an inaccurate estimate of the useful life of the asset. The *Mercy Community Hosp.* court deemed it inappropriate to apply the recapture regulation where the gain was the result of inflation and market forces. Plaintiff contends that because its gain was solely the result of market forces and because the intermediary did not establish that plaintiff had claimed excessive depreciation costs, the Secretary incorrectly applied the recapture regulation in the instant case.

As the Secretary points out, the court in *Mercy Community Hosp.* failed to even acknowledge that Congress expressly adopted the Secretary's regulation when it enacted the 1984 amendment. Further, the opinion fails to take into account that depreciation is an artificial concept which does not necessarily reflect costs actually incurred. Accordingly, the court declines to follow the *Mercy Community Hosp.* decision which represents the minority position on this issue.

In rejecting the same argument advanced by plaintiff in the instant case, the Eighth Circuit stated as follows:

Since the Secretary is only obligated to pay for "costs actually incurred," he may properly recapture claimed depreciation expenses where the value of the assets has not in fact declined. Moreover, attempting to distinguish the effect of actual consumption on an asset's value from the effects of inflation and market forces "would pose formidable administrative difficulties." Because of these difficulties, we find it reasonable for the Secretary not to refer to inflation or market forces when calculating what depreciation costs a provider has actually incurred.

*Creighton Omaha Regional Health Care Corp.,* 950 F.2d at 565–66 (citations omitted).

Similarly, the First Circuit has observed that administrative efficiency is the principle reason for using historical, nominal dollars to calculate depreciation. The court explained as follows:

To try to measure the current value of a facility each year; to try to assess the actual yearly economic losses caused by equipment wear and tear; to try to determine the extent to which any gain on resale reflects (a) less-then [sic]-expected wear and tear, (b) inflation, or (c) special market factors such as shortages, all would pose formidable administrative difficulties.

*Hoodkroft,* 879 F.2d at 974. Further, as the Secretary argues, because depreciation under the Medicare program is based upon historical cost, the effects of inflation and market forces upon the sale price are irrelevant in making an adjustment for depreciation expense upon disposal of the asset. Accordingly, the court concludes that the Secretary was not required to consider the effect of inflation or market forces in applying the recapture regulation.

Plaintiff also questions the deference that this court should give the agency's decision because of the HCFA Administrator's alleged failure to take into consideration whether the recapture regulation should be applied where a gain on sale is due to market forces. However, as the Secretary points out, the Administrator addressed this issue in the final administrative decision, stating that the reason for the gain is immaterial. (A.R. at 4–5.)

### E. Inconsistent Treatment of Medicare Health Care Providers

Plaintiff states that the Secretary's decision treats Medicare participating hospitals inconsistently. Plaintiff argues that because there is no valid reason for the alleged disparate treatment, the Secretary's decision is arbitrary and capricious and should be reversed.

Plaintiff suggests three situations in which the alleged disparate treatment might occur. First, plaintiff states that health care providers such as St. Mark's that own and sell their facilities and equipment are treated differently than health care providers that merely lease their equipment and subsequently sell the leasehold interest. Plaintiff asserts that the Medicare regulations do not to provide for recoupment of previously reimbursed lease payments when a leasehold interest is sold at a gain. This argument is premised on the assumption that lease payments include a factor for depreciation.[2] Plaintiff contends that there is no rational basis for requiring providers who sell owned assets at a gain to repay depreciation costs while not requiring providers who sell leasehold interests at a gain to repay lease payments.

Second, plaintiff states that the Medicare program distinguishes between health care providers who dispose of their assets while participating in the program and those who dispose of assets more than a year after terminating participation in the program. The regulations provide that gains and losses realized on a sale occurring within one year following the date on which the provider terminates participation in the program must be included in the determination of allowable costs. 42 C.F.R. § 413.134(f)(3). However, gains and losses realized from a sale occurring more than a year after terminating participation in the program are not included in the determination. Plaintiff states that a provider can avoid recapture completely by delaying disposal of its assets for one year after it terminates participation in the program. Plaintiff contends that there is no rational basis for treating providers who dispose of their assets within one year differently than providers who dispose of their assets after the year has expired.

Finally, plaintiff states that a third class of providers, those who acquired their assets prior to 1966, are not subject to recapture of depreciation costs. Those providers may choose an "optional allowance" for depreciation based on a percentage of operating costs. 42 C.F.R. § 413.139. Plaintiff states that although the optional allowance is merely a different way of recognizing depreciation, the program excludes recapture when providers elect this method of depreciating assets.

Plaintiff asserts that there is no valid reason for the program to distinguish between the different types of providers and that to recoup depreciation costs from St. Mark's, while not recouping similar payments from the providers described above, constitutes an arbitrary and capricious distinction between providers.

■ Regarding the alleged disparity in the treatment of providers disposing of depreciable assets and those disposing of leasehold interests, the Secretary points out that this argument is predicated on a wholly hypothetical circumstance and that plaintiff has provided no actual example of such an occurrence. The Secretary contends that such a circumstance would be extremely rare since a reasonable lessor of assets would likely restrict the right of a lessee to transfer the lease at a gain. Further, as the Secretary also points out, this argument is premised on the assumption that lease payments include a factor for the depreciation of the leased assets. Even if this were true, it does not establish that the lessee has a depreciable asset under the Medicare program.

The court agrees that plaintiff's argument on this issue is purely speculative. Further, the court concludes that there is insufficient similarity between the sale of depreciable assets and the sale of a leasehold interest to conclude that the Secretary treats the two circumstances inconsistently.

■ Next, plaintiff complains about the alleged disparity between the treatment of

---

**2.** Plaintiff's expert testified before the PRRB that a portion of rental payments is intended to cover the depreciation costs of the owner. (A.R. at 188.)

providers who dispose of their assets less than one year after termination of participation in the program and those who dispose of them more than a year later. The regulation at issue provides that an adjustment in allowable costs is necessary when a Medicare provider disposes of an asset at either a gain or a loss within one year after terminating participation in the program. 42 C.F.R. § 413.134(f)(3). The court agrees with the Secretary that one year is a reasonable time to require adjustments for depreciation following the disposal of assets. Further, as the Secretary observes, St. Mark's presumably was aware of the one year time limit and could have chosen to wait until it expired to dispose of its assets if it so desired. Because it did not do so does not mean that the regulation is irrational.[3]

■ Finally, in response to plaintiff's argument concerning the "optional allowance," the Secretary states that the optional allowance is in lieu of depreciation. The Secretary explains that the optional allowance was created because there was no historical basis available for depreciable assets that were acquired prior to 1966. The purpose of the optional allowance was to make an adjustment for the average hospital's operating costs. A decision of the HCFA Administrator noted that "the optional allowance in lieu of depreciation is completely distinct from the generally accepted concept of depreciation." Decision of the Administrator, HCFA, Medicare & Medicaid Guide (CCH) ¶ 28,661, at 10,318 (Sept. 23, 1977).[4] Thus, a rational basis exists for treating depreciation costs differently than the optional allowance.

## VI. RECOMMENDATION

Plaintiff cannot prevail on its claims as a matter of law. Accordingly, its motion for

summary judgment should be denied. Further, the Secretary's determination that it was necessary to make an adjustment for depreciation upon the sale of plaintiff's assets was not arbitrary, capricious, or an abuse of discretion. Therefore, the court should affirm the final administrative decision of the Secretary.

Copies of the foregoing Report and Recommendation are being mailed to the parties, who are hereby notified that they have the right to object to the Report and Recommendation. The parties are further notified that they must file any objections to the Report and Recommendation within ten (10) days after receiving it. Failure to file objections may constitute a waiver of those objections on subsequent appellate review.

DATED this 4th day of November, 1996.

---

3. Plaintiff states that a provider could avoid recapture by leasing its assets for a year after it terminates participation in the program and then selling the assets. *See Hillhaven Corp. v. Schweiker,* 570 F.Supp. 248 (M.D.La.1983). However, the regulations provide that where a lease purchase agreement constitutes a "virtual purchase" (defined in 42 C.F.R. § 413.130(b)(8)), the amount of rental payments includable in allowable costs is limited to the amount that the provider would have included in capital related costs if it had legal title to the asset. 42 C.F.R. § 413.130(b)(9)(i). If the lessee becomes the

owner of the leased facility either by operation of the lease or by other means, the portion of the lease payments considered to be depreciation under 42 C.F.R. § 413.130(b)(9)(i) must be used in calculating the limitation on adjustments for the purpose of determining the gain or loss under § 413.134(f) upon disposal of the asset. 42 C.F.R. §§ 413.130(b)(9)(vi).

4. A copy of this decision is attached to plaintiff's memorandum in support of its motion for summary judgment.